### MOTZING v. EXCELSIOR BREWING CO.

(Supreme Court, Appellate Division, Second Department. July 27, 1905.)

1. MASTER AND SERVANT—SAFE APPLIANCES—QUESTION FOR JURY.

Pitch confined in a kettle was found to melt first at the bottom, and, by expanding, to burst the kettle. Defendant, to remedy this, inserted a pipe into the kettle to act as a vent for the melting pitch. To keep the pitch from solidifying in this pipe, another pipe was inserted inside of it. Plaintiff, defendant's servant, was called upon to unscrew this inner pipe, to do which it was necessary to melt the pitch, and while he was so doing the expansive force of the melting pitch blew out the pipe, and plaintiff was injured. This apparatus had been in use from six to nine months prior to the accident, and no former injury had resulted therefrom; but the dangerous nature of melting pitch as an explosive force was obvious from the former breaking of the kettles. *Held*, that whether defendant had failed to exercise reasonable care in the appliances furnished by him was a question for the jury.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 1011.]

2. SAME—INJURIES TO SERVANT—RELIANCE ON DIRECTION.

Plaintiff was an engineer, and had never been called upon to remove the pipe before, and on the occasion in question knew nothing about the condition of the melting pitch, and was given no warning by the foreman, who directed him to do the work. *Held*, that plaintiff had a right to assume that it was safe for him to obey the direction.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 675–677.]

Appeal from Trial Term, Kings County.

Action by Karl Motzing against the Excelsior Brewing Company. From a judgment for defendant and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, RICH, and MILLER, JJ.

H. Aaron (L. N. Wood, on the brief), for appellant.

John Vernou Bouvier, Jr., for respondent.

MILLER, J. The defendant used in its brewery a pitching machine purchased of reputable manufacturers, consisting of a kettle having in it a rotary pump, which forced the pitch, when heated, into the beer kegs. The kettle was placed over a fire box set deep in the floor. It was found that when the pitch was heated, after it had been allowed to cool, it melted first at the bottom, and the hard crust on top so confined the melting pitch as to create an expansive force, which would occasionally crack the bottom of the kettle and allow the pitch to run into the fire. The defendant's brewmaster evolved a scheme to remedy this: A pipe 2⅜ inches in diameter and 21 inches long, with holes in the bottom, was placed in the kettle in a vertical position, so that the pitch melting at the bottom could find a vent through the open pipe; but it was necessary to keep the cooling pitch from hardening within this pipe, and another pipe, closed at the bottom, was fitted in the outside pipe, and screwed down by means of threads at the bottom of each pipe fitting into each other. When the pitch was hot, the two pipes thus

fitted were placed in the kettle as described, and when the machine. was to be used again the inside pipe was taken out by means of a Stilson wrench. The machine had been thus used from six to nine months. Such force was required to unscrew the inner tube that it was occasionally cracked and bent, thereby requiring a new one, and at the time of the accident to the plaintiff the third tube was in use. This had also become cracked and bent, so that it could not be forced into the outer tube far enough for the threads to catch; but how long this condition had existed does not appear. The plaintiff was an engineer, and had never had anything to do with this machine. On the morning in question, after the fire under the kettle had been started, in the absence of the man who usually attended to the removal of the inner pipe, the brewmaster requested the plaintiff to remove the pipe, and while he was attempting to adjust the wrench to the pipe the expansive force of the melting pitch at the bottom of the kettle blew out the pipe and expelled the hot steam upon the plaintiff, causing the injuries for which the action is brought. The cooling pitch frequently got into the threads of the two pipes, rendering it necessary to melt the pitch at the bottom before the inside pipe could be removed. The brewmaster testified:

"What was done on this particular occasion when the accident happened was the same as always had been done before the accident. The fire would have to be lighted and the heat kept up for about 10 or 15 minutes before you could unloosen the inside tube and sufficiently melt the pitch."

It did not appear that a similar accident had happened before.

At the close of the plaintiff's evidence a nonsuit was granted, the court briefly stating its reasons therefor, which were that the accident was one not reasonably to have been apprehended; that although the inner tube was bent and cracked, when it was within the outer tube, the fact could not be readily discerned whether the threads of the two tubes met and fitted into each other; and that, assuming the accident to have resulted from the premature starting of the fire, it was caused by the negligence of co-servants.

In respect to the last reason stated, the learned justice evidently overlooked the fact that it was necessary to start the fire before the pipe could be removed, and that the jury could have found that the fire was started in precisely the same manner as had been customary. Of course, the respondent does not question the rule that the defendant owed the duty to use reasonable care to provide reasonably safe tools and appliances, and to keep them in a reasonably safe condition, but seeks to sustain the nonsuit upon the ground that there was no evidence which could warrant a jury in finding failure on the part of the defendant to observe either of those requirements. The fact that no previous accident had happened is entitled to great weight, and may frequently be controlling; but it is not controlling where a situation obviously dangerous is presented. The evidence is undisputed, and we must look to it to determine whether reasonable minds could draw from it an inference that in the exercise of reasonable care the defendant should have performed some duty to the plaintiff which it neglected. Obvious-

ly the defendant knew, or should have known, from the experience of the broken kettles, that the expansion from melting pitch, if confined, might form a dangerous explosive force. It was to provide against this very thing that the pipe contrivance was made. This was so made that it was necessary to melt the pitch at the bottom before the inner pipe could be taken out and vent furnished, and whether the inner tube was straight or bent, cracked or whole, whether the thread at the bottom could be screwed into the thread on the inside of the outer tube, it would seem to be perfectly obvious that upon its being removed, and sudden vent thus furnished to an expansive force, that force might be sufficient to expel the molten pitch up through the tube and onto whoever happened to be in the way. The fact that for six or nine months prior to the accident it had been possible to get the inside pipe unscrewed before sufficient expansive force collected to cause trouble was not very good evidence that they would always be able to do this, because it would seem that they were at all times experimenting with the possibility of too great expansion for safety before the removal of the inner tube.

I do not think that the fact that the thread of the inner tube did not fit into the thread of the outer tube, so that it was expelled before the plaintiff had unscrewed it, is very material, because obviously the force which expelled it would have been sufficient, upon its being unscrewed and a sudden vent thus given, to have forced the pitch up onto him with the same result. It would seem to me that it would not require a mechanical genius to have devised some apparatus so constructed that the vent could be furnished before sufficient force to cause an explosion had been created by the melting pitch. I think this machine, with the appliance put in by the defendant, was obviously dangerous, and that it at all times subjected any person who undertook to unscrew the inner tube to the danger of being covered with molten pitch, and certainly the evidence presented a situation from which a jury could say that the defendant had failed to exercise reasonable care. The plaintiff knew nothing about the operation of this machine, had never undertaken to remove this pipe before, knew nothing about the condition of the melting pitch at the bottom of the kettle, or how long the fire had been burning, and, in the absence of any warning, had a right to assume that it was safe for him to do what the foreman directed him to do.

I recommend that the judgment and order be reversed, and a new trial granted; costs to abide the event. All concur.