### KING v. REID.

(Supreme Court, Appellate Division, First Department. February 7, 1908.)

**1. MASTER AND SERVANT—INJURIES TO SERVANT—EVIDENCE—SUFFICIENCY.**

In an action for injuries to a press feeder, owing to his leg having been caught between the spokes of a fly wheel, evidence *held* insufficient to show negligence on the part of the master.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 954–977.]

**2. SAME.**

On an issue as to whether a master had properly guarded machinery, the fact that no previous accident had ever happened is entitled to great weight, where the condition is not obviously dangerous.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 954–977.]

Houghton, J., dissenting.

Appeal from Trial Term.

Action by Charles J. King against William G. Reid. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, LAUGHLIN, and HOUGHTON, JJ.

James Kearney, for appellant.
Herbert C. Smyth, for respondent.

INGRAHAM, J. The plaintiff, a man 55 years of age, had been a "press feeder" for over 40 years, and had been employed by the defendant and was familiar with his establishment. On the 6th

of January, 1904, he was given work by the defendant, and commenced work about 8 o'clock in the morning. He was put to work upon a Campbell press, which required him to stand upon a platform 21 inches in length and 14 inches in width. Across an aisleway from this press, which was about 28 inches wide, there was a press, known as a "Huber Press," upon which there was a fly wheel adjoining the aisle, so that the distance between the platform of the Campbell press and the projecting fly wheel was about 28½ inches. Both presses were in operation. This fly wheel was 32½ inches in diameter and was not guarded. The platform upon which the plaintiff was working was connected with the floor by two iron steps; the platform being about 32 inches from the floor. After the plaintiff had been working about an hour and a half he asked a fellow employé named Waldron to take his place. Waldron came up on the platform and took the plaintiff's place alongside of the machine, who then started to go down to the floor. He testified that he squeezed past Waldron, and put one foot on the second step, when he slipped. He grabbed Waldron to save himself, but in some way turned around and fell over upon the floor, and his leg went in between the spokes of this fly wheel, and for the injuries thus sustained he has recovered a judgment. A motion for a new trial upon the judge's minutes was made and denied, and the defendant appeals from the judgment and order denying the motion for a new trial.

The fly wheel upon the Huber press is used in turning the machine backwards or forwards by hand when necessary after the power has been shut off, and there was evidence to show that it was impracticable to have a guard about it, as the operator had to use his foot to turn the wheel, which a guard would prevent. It is quite evident that there was no danger of the workmen being injured by this wheel in the condition that it was in, unless they fell into it. It also appeared that this machine had been in operation for about 20 years in the same condition as at the time of the accident, and that no accident had ever been caused by it. An accident of this kind had never been known before, and a machine similar to that of the defendant had been in general use in printing establishments in New York for many years, and it was not customary to have it guarded or protected, where the bottom of the fly wheel was more than 2 or 3 inches from the floor. There was some evidence by the plaintiff that in a few establishments a guard had been put about a fly wheel attached to machines of this character; but these protections were only when the wheel was within 2 or 3 inches of the floor, and there is no evidence that the guards were used when the wheel was sufficiently high from the floor so that there was no liability of a person's foot being caught while walking along the aisle. It also appeared that the state factory inspector had visited the defendant's premises yearly, looked over the machinery, and no suggestion had ever been made that a cover or protection of any kind was necessary. The platform was made of wood, and the steps were iron. There was no sign of oil or any-

thing else on the platform or steps; but the iron steps were somewhat smooth from use. From the position of this platform it would seem almost impossible for a person to fall from the steps and get his foot into the fly wheel, and the plaintiff must have fallen from the platform.

The plaintiff claims that defendant was in two respects negligent. The first is a violation of section 81 of the labor law (chapter 415, p. 480, of the Laws of 1897, as amended by chapter 192, p. 353, of the Laws of 1899). That section provides that:

"All vats, pans, saws, planers, cogs, gearing, belting, shafting, set-screws and machinery of every description, shall be properly guarded."

The purpose of this enactment has been stated by the Court of Appeals in Glens Falls P. C. Co. v. Travelers' Ins. Co., 162 N. Y. 399, 56 N. E. 897, to give force to the existing rule that masters should afford a reasonably safe place in which their servants are called upon to work; but it was said:

"We think, however, that the Legislature could not have intended that every piece of machinery in a large building should be covered or guarded. This would be impracticable. What evidently was intended was that those parts of the machinery which were dangerous to the servants whose duty required them to work in its immediate vicinity should be properly guarded, so as to minimize, as far as practicable, the dangers attending their labors. Human foresight is limited, and masters are not called upon to guard against every possible danger. They are required only to guard against such dangers as would occur to a reasonably prudent man as liable to happen."

Can it be said that a reasonably prudent person could have anticipated that any of the employés engaged in operating this machinery would put his foot inside of the fly wheel, the inner rim of which was 11 or 12 inches from the floor? The obligation imposed upon the defendant was to properly guard the machine. It had been in use many years before this statute was passed. No accident had ever occurred. There was no suggestion that a guard was necessary. Nothing had ever occurred that would indicate that the absence of a guard would subject any of the defendant's employés to such an accident. The machine was to be used, not by inexperienced persons, but by experienced pressmen who understood the machines. The situation was apparent, and, so far as appears, was perfectly safe for any one who did not fall off the platform into the machine. It seems to me that this occurrence was not one that could have been anticipated; nor could a reasonably prudent person have anticipated that a person would fall into this fly wheel from the platform, or that it was at all necessary to guard the wheel so that a person falling from above could not get injured by it. It was not an occurrence that was at all likely to happen, so that in the ordinary course of business it was necessary to guard against it. All machinery of this kind is liable to cause injury when unexpected and not to be anticipated events occur; but I think a machine is properly guarded when those employed are protected when using the ordinary methods of operating it. The platform

upon which the plaintiff was at work was obviously intended to be used by one man while engaged in feeding the machine. No employer could have anticipated that two persons should attempt to be upon the platform at the same time, and as a result one would fall off into an adjoining machine. An examination of section 81 of the labor law fairly establishes that there was no intention to make an employer of labor an insurer against all injury caused by machinery, or to require that he should anticipate or provide against an extraordinary or not to be anticipated occurence.

In considering whether or not the failure to guard the fly wheel was negligence, we note the fact that the statute makes provision for an inspection of factories by inspectors appointed by the state, and that:

"If a machine or any part thereof is in a dangerous condition or is not properly guarded, the use thereof may be prohibited by the factory inspector, and a notice to that effect shall be attached thereto. Such notice shall not be removed until the machine is made safe and the required safeguards are provided, and in the meantime, such unsafe or dangerous machinery shall not be used."

The defendant's factory was inspected yearly by inspectors, and no suggestion was ever made that this fly wheel was not properly guarded, nor was the defendant required to protect it. Factory inspectors, who are in the nature of experts employed by the state to see that the law is complied with, did not consider that this fly wheel was unsafe or improperly guarded. The evidence in relation to other machines to which guards had been attached in the few factories shows them to have been materially different from the machine in question, and the guard then used was evidently intended to protect a person walking along the floor—a guard which was unnecessary in relation to this machine because of the distance between the fly wheel and the floor.

While it is conceded that the fact that no previous accident had ever happened is not controlling, where a condition obviously dangerous is presented (see Motzing v. Excelsior Brewing Co., 107 App. Div. 275, 94 N. Y. Supp. 1118, affirmed in 186 N. Y. 577, 79 N. E. 1111), it is nevertheless entitled to great weight in determining whether or not the machinery is properly guarded, where the condition is not obviously dangerous. "It is a mistake for one to take his stand after an accident and to impute responsibility from a view thus obtained. It is nearly always easy, after an accident has happpened, to see how it could have been avoided. But, taking our stand before this accident, the very first of the kind, so far as we know, that ever occurred, we can, upon the facts of this case, see no ground for imputing against the defendants the want of that ordinary care, diligence, and foresight which they, as employers, owed to the men in their service." Burke v. Witherbee et al., 98 N. Y. 562.

There is also a claim that there was some evidence of negligence in the slippery condition of the steps leading to the platform; but there is no evidence that the steps had any relation to the accident, or that a mere worn iron step is an unsafe appliance.

I think the judgment and order should be reversed, as against the evidence, and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, P. J., and McLAUGHLIN and LAUGHLIN, JJ., concur. HOUGHTON, J., dissents.