KIMMERLE v. CAREY PRINTING CO.

(Supreme Court, Appellate Division, Second Department. May 12, 1911.)

1. MASTER AND SERVANT (§ 121*)—MASTER'S LIABILITY—MACHINERY AND PLACES FOR WORK—GUARDING MACHINERY.

Labor Law (Consol. Laws 1909, c. 31) § 81, which provides that all machinery shall be properly guarded, does not require a master to guard against the possibility of accident or danger, and the guarding of moving parts of a machine which are entirely within a heavy cast iron frame, and cannot be reached without putting a hand inside such frame, is not within the statutes, the intent of the law being to provide that those parts of machinery which are dangerous to those whose duties require them to work in its immediate vicinity should be properly guarded, and, where a press is so constructed that there is no danger to the person of an employé working on or around it in its ordinary operation, it is properly guarded.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 228–231; Dec. Dig. § 121.*]

2. MASTER AND SERVANT (§ 217*)—MASTER'S LIABILITY—RISKS ASSUMED BY SERVANT—PLACE OF WORK—SLIPPERY FLOOR.

Where plaintiff, injured by falling on a slippery floor and having his hand caught in a press, had worked in defendant's pressroom for 18 months, both day and night, and knew of its conditions, the extent to which the place was cleaned, and that, if the floor was slippery and he happened to fall where his hands would get inside of the press, he was likely to be injured, and continued his employment with these dangers open and obvious, he assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Kings County.

Action by George Kimmerle against the Carey Printing Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

Frederick J. Moses, for appellant.

James C. Cropsey (Harry E. Lewis and Charles M. Davenport, on the brief), for respondent.

WOODWARD, J: This is a common-law action for the recovery of damages for personal injuries sustained by the plaintiff through the alleged negligence of the defendant, and the jury has found a substantial verdict in favor of the plaintiff, which he now seeks to sustain. The plaintiff had been in the employ of the defendant as a press-feeder in a printing establishment for about 18 months, the most of the time in the daytime. He had, at his own request, been transferred to the night gang for the purpose of earning larger compensation. The room where he was at work was about 200 feet long and 50 feet wide, and was occupied by 17 large presses, 16 of which were placed along the side of the building, with the back of the presses, where the printed sheets were delivered, toward the wall on the Brooklyn Bridge side, and about 4 feet from the wall. These presses were what are known as "Optimus presses," a standard make, and there is no suggestion that they were out of order or defective in any respect. On the night of November 23–24, just after midnight, the plaintiff was instructed by the night foreman to clean up press No. 7, on which he had been working. This required the use of a brush, and, not having one at hand, plaintiff went to the feeder of press No. 8, and was told by the latter that he would find a brush on a shelf fastened against the wall in the rear of press No. 8, which was at the time in operation. The plaintiff started to walk to the rear of press No. 8, and while so doing his foot slipped sidewise, and, in falling, he threw out both his hands, his right hand passing through an opening in the heavy iron casting, constituting the frame of the press, and being caught between such frame and the shoe of the rack, which appears to be a curbed iron or steel in the form of a horseshoe, which moves forward and back, inside of this iron frame, in company with the bed of the press. This shoe is entirely covered by the frame. It at no time passes outside of the frame, and the only way that the plaintiff could have been injured was by placing his hand through this opening in the iron frame far enough to reach this moving shoe. The plaintiff testifies:

"As this shoe works back and forth in the press, it comes up close to the frame inside. So any person walking near that frame or alongside of it, outside the frame, wouldn't be touched by the shoe. I don't think so. The frame of this press is a heavy iron casting."

The plaintiff testified also, that some of the presses in this room, where he had worked for 18 months, had a covering or guard over the end of the shoe or the end of the rack, but there is absolutely no evidence in the case that these coverings or guards were placed upon

these machines for the purpose of guarding against accidents. The plaintiff himself testified that:

"It never occurred to me this shoe was a thing that would be likely to injure anybody. I never heard anybody around the shop suggest, or outside the shop or in any other printing shop, that a shoe was a thing likely to injure a man if he got his hand or fingers or foot in there. Till I was hurt I never heard of a man getting hurt that way, never heard any man suggest the possibility of it. * * * There is no way a person could be hurt by that shoe, without putting his hand, or arm or leg inside. There is no occasion for a person operating that press to put his hand or his foot or any part of his body inside that frame where this shoe is, while the press is in motion."

It appears that the machines used in this printing office were all from one firm, that some of them had these guards on, and that others did not, and no one testifies that they were for the purpose of protecting against accidents of the character of the one involved in this accident, or that experience had ever justified or called for such guards.

[1] The provision of the labor law relied upon to give character to this action (section 81) provides that:

"All vats, pans, saws, planers, cogs, gearing, belting, shafting, set-screws and machinery, of every description, shall be properly guarded."

But it does not require that there shall be guards to prevent the possibility of an accident. It is that machinery shall be properly guarded, and clearly the moving parts of a machine, which are entirely within a heavy cast iron frame, and which cannot be reached without passing a hand or foot inside of such frame, where it is conceded there is no occasion for doing so, is properly guarded, or is not within the contemplation of the statute. "The intent of the law," say the court in Kirwan v. American Lithographic Co., 124 App. Div. 180, 182, 108 N. Y. Supp. 805, 806, "was to provide that those parts of the machinery which were dangerous to those whose duty required them to work in its immediate vicinity should be properly guarded. Neither by the labor law nor any other are masters called upon to guard against every possible danger. They are required only to guard against such dangers as would occur to a reasonably prudent man as liable to happen. Glens Falls P. C. Co. v. Travellers' Ins. Co., 162 N. Y. 399, 403 [56 N. E. 897]." The plaintiff himself testified that he had worked in this establishment, employing from 30 to 40 men in the pressroom, for a period of 18 months, with at least five of the presses without these so-called guards, and that he had never thought of these presses being dangerous, and that he had never heard it suggested, either in this or any other shop, that they were dangerous. Certainly in a period of one year and a half, with 30 to 40 men employed in the same room upon these same presses, if there was any such menace as it was the duty of the master to discover and remedy, some one would have suggested it. Some of these men must have had that average degree of prudence and intelligence which goes to make up the man of reasonable care, and yet the plaintiff himself negatives the idea that there was such a danger to be apprehended. It had never once occurred to him, although he had noticed that some of the machines had this alleged guard upon them, and that others did not. The language of the court in the Kirwan Case, above cited, is pertinent:

"There could be no possible danger from the shaft to persons working at the table. It was completely covered by the top of the table and the side piece. * * * So far as the ordinary work of the establishment was concerned, contact with the shafting was completely prevented. It would be impossible to so cover the machinery of a factory that no one could crawl into it and be injured."

We are of the opinion that as a matter of law the labor law does not help the plaintiff in this case, and that it was error for the learned trial court to refuse to charge "that if a machine is so constructed that there is no danger to the person of an employé working on or around that machine that it is properly guarded." In Valentino v. Garvin Machine Co., 139 App. Div. 139, 144, 123 N. Y. Supp. 959, 963, this court say:

"It would follow that the judgment of nonsuit in this case must be reversed, if it were not for the fact that the evidence establishes no actionable negligence, which is the proximate cause of plaintiff's injury. A master is not bound under all circumstances to guard all of the machines in his factory. Some force must be given to the word 'properly,' and the necessity of guarding must to some extent be determined by the probable dangers from exposure. Glens Falls P. C. Co. v. Travellers' Ins. Co., 162 N. Y. 399, 56 N. E. 897; Dillon v. National Coal Tar Co., 181 N. Y. 215, 73 N. E. 978. It is difficult to understand in this case, considering the position in which the cogs were placed, how plaintiff could get his hand into them in the ordinary conduct of defendant's business. He does not claim that he did. He says that he slipped, and in that way thrust his hand into the machine. The slipping was the primary cause therefore. But there is no evidence as to the cause of his slipping, or that the same was due to any fault or negligence of defendant."

In King v. Reid, 124 App. Div. 121, 124, 108 N. Y. Supp. 615, 617, the court, after quoting the opinion of the court in the Glens Falls P. C. Co. v. Travellers' Ins. Co., supra, in discussing printing presses, say:

"All machinery of this kind is liable to cause injury when unexpected and not to be anticipated events occur; but I think a machine is properly guarded when those employed are protected, when using the ordinary methods of operating it."

The evidence in this case, furnished by the plaintiff, is positive that the machine in question was so constructed that no injury could come to the employé while engaged in the ordinary operation of the machine, and that it was only upon the happening of "unexpected and not to be anticipated events" that the plaintiff thrust his hand into a position of danger. The machine involved in this action was as a matter of law under all the authorities and in reason properly guarded, and the defendant was entitled to have his request charged.

There was no evidence in this case from which it could be determined that the plaintiff slipped and fell through any negligence chargeable to the defendant. There is a great deal of testimony to the effect that the floor of this printing shop in the rear of all of the presses was more or less greasy; that the oil used in lubricating the machinery flew out upon the floor, and became mixed with ink, benzine, and other materials, forming a coating; and that this general condition had existed throughout the 18 months that the plaintiff had worked there, the plaintiff testifying that he was familiar with this general condi-

tion, but the plaintiff himself, while testifying that he slipped, does not pretend to say that this was due to the presence of this grease and dirt. He says:

"I slipped, and I reached over and fell down on my arm—I slipped on the floor. * * * When I fell, I could not see just where I was stepping. It was too dark. I did not find out, after I fell, what it was I slipped on. * * * I do not know what the condition of the floor was at the back of 8 press, where I slipped and fell, just immediately before I fell. I do not know whether or not there was anything on the floor at that time. I fell forward—sort of sideways. It was sideways, toward the right. * * * I fell sideways. My foot slipped out from me sideways. I was walking straight ahead, slowly, not very slow; just enough to take one or two steps off the press. I didn't jump down and my foot slip out from under me as I jumped down. I am sure of that, absolutely. I stepped down, so I got down safely; so I was firmly on the floor of the shop. Then I turned and took a couple of steps toward the press. Then I took one or two steps behind the press, walking towards the bench. * * * I had taken one or two steps toward that press, towards No. 9, and my foot slipped and I fell toward my right side. I don't know whether my hand or arm came down on the frame at the left of the bench. I slipped and grabbed with both hands while I was falling. My foot slipped from under me sideways. My foot slipped from under me sideways, although I was walking straight ahead."

The court asked:

"At the time you fell, can you say which foot slipped? A. I could not say whether the right or the left. Q. When you were falling, did you make a grab with both hands? A. Yes, sir. Q. Towards which side? A. One this side and one the other. Q. You were not exactly falling sideways? A. No, sir; my foot went under me. Q. And you put your right hand out to the right and your left hand to the left? A. Yes, sir. Q. Did the left catch anything? A. Caught the table and slipped off the table."

The above is all the evidence as to the plaintiff's slipping. Not a word of the evidence tends to show that the plaintiff slipped because of oil upon the floor. Indeed, the physical facts to which he testifies indicate rather that he stepped upon some rolling object, for his foot went out sideways when he was moving forward. At least, there is no suggestion in the plaintiff's testimony that he slipped upon the oily surface because of its alleged slippery condition. The evidence was that the floors were slippery in places because of this oil, but there was no evidence from which it is anywise certain that there was any such condition at the exact point where the plaintiff fell, nor is there anything in the plaintiff's evidence from which it can be said that he fell because of a slippery condition of the floor. It is just as probable that he slipped upon something which may have dropped upon the floor a moment before, and for which the defendant could not be held responsible.

[2] But, assuming that the plaintiff slipped upon the oily floor, he knew of the condition. He was familiar with that pressroom, where he had worked on various presses during his 18 months of employment, and he must be deemed to have assumed the risks of the employment. Upon this phase of the case, it would be hard to distinguish the facts here presented from those involved in Welch v. Waterbury & Co., 136 App. Div. 315, 321, 120 N. Y. Supp. 1059, where we held that, where a servant enters upon an employment from its nature necessarily hazardous, he assumes the usual risks and perils of the

service, and also risks which are apparent to ordinary observation. In the present case, there is no question that the plaintiff knew as well as the master could have known all of the conditions prevailing in that pressroom. He had worked there a year and a half. He had worked on any of the presses to which he happened to be assigned, both day and night. He knew the extent to which the place was cleaned, and he knew, if the floors were slippery, and he happened to fall where his hands would get inside of the press, he was likely to be injured, but he continued the employment with these open and obvious dangers, and he must be deemed to have accepted the employment with its necessary elements of danger under the conditions there prevailing.

The judgment appealed from should be reversed.

Judgment and order reversed and new trial granted, costs to abide the event. All concur.