RABE v. CONSOLIDATED ICE CO.

(Circuit Court of Appeals, Second Circuit. February 25, 1902.)

No. 32.

1. MASTER AND SERVANT—GUARDING MACHINERY—FACTORY—WHAT CONSTITUTES—COMMERCIAL ICE HOUSE.

A commercial ice house, which is extensively equipped with machinery, and in which numerous operators are employed, is a "factory," within Laws N. Y. 1897, c. 415, providing that "shafting, set screws and machinery of every description shall be properly guarded" by the owners

of factories where machinery is used, and declaring that the term "factory" shall be construed to include also a "mill, workshop or other manufacturing or business establishment where one or more persons are employed at labor."

2. SAME—HARMLESS ERROR.

Error in charging that the factory statute had no application to a commercial ice house was harmless, where the court further charged that it was a rule of common law, irrespective of statute, that machinery must be safe, and that in the case of a set screw (the instrument by which plaintiff was injured) it might be dangerous or safe according to its situation, and according to the parties called on to work on the machine, and therefore left to the jury to determine as a question of fact whether the screw was dangerous or safe, the state courts having construed the statute as not imposing duties on an employer greater than those imposed by the common law, etc.

In Error to the Circuit Court of the United States for the District of New York.

John S. Wolfe, for plaintiff in error.

Thomas D. Adams, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The plaintiff in error was the plaintiff in the court below, and brought this action to recover damages for personal injuries alleged to have been received by the negligence of the defendant. He was an employé of the defendant, assigned to attend certain friction apparatus in the elevator room connected with the defendant's ice house. In the same room, but at some little distance from his post of duty, there was a revolving shaft having a collar and a projecting set screw. The plaintiff had no duties with respect to this part of the apparatus, or which would take him to the place at which the collar and set screw were. Nor did any of the employés have any occasion to go there except to oil or repair the apparatus when the shaft was not in motion. While the plaintiff was attending to his ordinary duties, he observed a rope winding upon the shaft near the set screw, which had been thrown there by the inadvertence or carelessness of some of the employés, and as the rope endangered the apparatus the plaintiff immediately went to it, and attempted to remove it. In the attempt he was badly hurt, the set screw being the cause, or a contributory cause, of the accident.

By statute (Laws N. Y. 1897, c. 415) it is provided, among other things, that "shafting, set screws and machinery of every description shall be properly guarded" by the owners of factories where machinery is used. The statute declares that the term "factory" shall be construed to include also "mill, workshop or other manufacturing or business establishment where one or more persons are employed at labor."

It is insisted for the plaintiff in error that upon the trial of the action the court below erred in instructing the jury that the factory statute had no application to the case, and the only assignment of error is based upon the exception taken to that part of the judge's charge. The material part of the judge's charge was as follows:

"The controversy upon the part of the plaintiff is based upon the negligence of the defendant in failing to guard the set screw at the free end of this revolving shaft, and in that connection the law of the state of New York of 1897 has been called to your attention, which I think has been correctly stated as providing that all set screws in manufactories where operatives are employed shall be guarded. Of course, you appreciate just what this set screw is. In this case it was placed there to fasten a collar so that it would not revolve,—so that it would stay upon the larger motive power shaft,—which, according to the testimony, was revolving at the rate of from 42 to 125 revolutions a minute. The head of the screw protrudes above the collar, and when rapidly revolving it may not be seen by the operative. It is in such a situation that it would be apt to catch upon anything that was thrown in its way. This law provides that such set screws shall be guarded, but I think I will charge you, as a matter of law, that the law of the state of New York in this regard has no application whatever to this controversy for many reasons which it is unnecessary for me to detain you with. As I have said before, it is a rule of common law, irrespective of any statute of the state, that machinery must be safe. In the case of a set screw, it may be dangerous or safe according to the locality in which it is placed, and according to the parties who are called upon to work upon the machine; and that, I think, is a question which, under all the circumstances of the case, should be submitted to you to determine. Of course, if this set screw was guarded, as some set screws are guarded, by a hood placed over it, and kept in position by a sunken screw, it could not have caught upon the rope, or the rope could not have caught upon it, and it is the contention of the plaintiff that it was the failure to provide a proper guard for the set screw that caused the accident. On the other hand, the defendant insists that this screw was guarded properly, even within the rule of the statute of the state; guarded by reason of its position; guarded because it was in a place where the plaintiff had no right or occasion to go when occupying his position by the lever, and where no one went except to oil the machinery at this particular point. There was an opening through which the elevator passed (4x6 feet), and the opening was filled with machinery to a certain extent. Upon the extreme southern end of the shed was this small platform or space 18 to 20 inches wide between the opening and the end wall. It was there that the free end of the shaft revolved, and it is said that being in that position, no one having any occasion to go there, that it was in fact guarded, and as safe as if the set screw had been on the outside of the extreme southern wall of the building. This is a question which, I think, under the evidence in the case, is for you to determine."

We think that a commercial ice house, which is extensively equipped with machinery, and in which numerous operatives are employed, is a factory, within the meaning of the statute. The purpose of the statute is to throw a safeguard around the workmen employed in business establishments where machinery is in use which may endanger those who are likely to be brought into contact with it, and to whom its presence, if it is not protected, is a constant menace. So far as is consistent with the language of the statute, that purpose should be given effect. The language is sufficiently comprehensive to include a commercial ice house. By the statutory definition, a factory includes, not only a manufacturing establishment, but a business establishment where one or more persons are employed at labor, and the particular enumeration preceding the term, "or other manufacturing or business establishments," is too meager to restrict the meaning of the term by the application of the rule ejusdem generis. We think, however, that no error prejudicial to the plaintiff was committed by the trial judge in his instructions. In Freeman v. Mills Co., 70 Hun, 530, 24 N. Y. Supp. 403, affirmed

142 N. Y. 639, 37 N. E. 567, the court, in adverting to this statute, said:

"The duty prescribed by the statute is not more or greater than the common-law duty of an employer to employés to provide a safe place in which, and proper machinery with which, to work, and the defendant's liability to the person injured, by reason of the statute not being complied with, is not an absolute one, but is subject to the same limitations and restrictions as is the common-law liability for not furnishing a safe place and proper machinery."

In Knisley v. Pratt, 148 N. Y. 375, 42 N. E. 986, 32 L. R. A. 367, the court observed in its opinion that the statute does not "in terms give a cause of action to one suffering an injury by reason of the failure of the employer to discharge his duty thereunder. An action for such injury is the ordinary common-law action for negligence, and subject to the rules of the common law." In Glens Falls Portland Cement Co. v. Travellers' Ins. Co., 162 N. Y. 403, 56 N. E. 897, the court used this language:

"The manifest purpose of the enactment was only to give more force to the existing rule that masters should provide a reasonably safe place in which their servants are called upon to work. We think, however, that the legislature could not have intended that every piece of machinery in a large building should be covered or guarded. This would be impracticable. * * * The statute does not attempt to specify how machinery shall be guarded otherwise than as 'properly guarded.' The necessity for the guard. and the character and description of the guard, must, of necessity, depend upon the situation, nature, and dangerous character of the machinery, and in each case becomes a question of fact."

The construction placed upon the statute by the state courts is authoritative in the federal courts. Adopting this construction, it is plain that the trial judge presented to the jury as fully and adequately the rules for their proper guidance in considering the case as he would if he had instructed them that the statute was applicable. No complaint has been made of the instruction to them in regard to the duty of an employer to provide a safe place and safe machinery, and after these instructions he then left it to the jury to determine as a question of fact whether, in view of the location and circumstances, the set screw was dangerous or safe, although not specifically protected. This was equivalent to instructing them to find whether it was "properly protected," within the requirement of the statute,—a question which, according to the language of the court of appeals, depends upon "the situation, nature, and dangerous character of the machinery," and is to be decided in each case as a question of fact.

The judgment should be affirmed, and it is accordingly so ordered.