## CASEY v. BARBER ASPHALT PAVING CO.

### (Circuit Court, E. D. Washington, S. D. November, 1911.)

1. STATUTES (§ 211*)—CONSTRUCTION—TITLE OF ACT.

Where the meaning of the body of an act is doubtful, reference may be had to the title to remove the ambiguity or to supply an omission, especially where there is a constitutional requirement that the subject or object of an act must be expressed in the title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 288; Dec. Dig. § 211.*]

2. MASTER AND SERVANT (§ 121*)—CONSTRUCTION OF STATUTE—MACHINERY IN "FACTORY," "MILL," OR "WORKSHOP."

A plant for mixing the materials used in making asphalt pavement, consisting of machinery mounted on an open or flat car, moved from place to place as required, is not a "factory, mill, or workshop" within the meaning of Laws Wash. 1905, c. 84, as amended by Laws 1907, c. 205, providing for the protection and health of employés in factories, mills, and workshops, and requiring the boxing or guarding of machinery and shafting therein, etc.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 228-231; Dec. Dig. § 121.*

For other definitions, see Words and Phrases, vol. 3, pp. 2642-2643; vol. 5, pp. 4506-4508; vol. 8, p. 7525.]

At Law. Action by E. L. Casey against the Barber Asphalt Paving Company. On motion by defendant for judgment notwithstanding the verdict. Motion granted.

Thomas & Toner and Bennett & Sinnott, for plaintiff.
Post, Avery & Higgins and Gose & Gose, for defendant.

RUDKIN, District Judge. The defendant in this action is a corporation engaged in the business of laying asphalt pavement in roads and streets, as its name would indicate. In the prosecution of its work it maintains and operates certain machinery for the purpose of mixing, heating, and preparing the crushed rock, sand, cement, and asphalt out of which the pavement is made. This machinery is assembled on a car which does not differ materially from the flat car in common use. The plant consists of a mixer, a heater, and elevators for hoisting the materials, and the whole is operated by a 40-horse power gasoline engine connected up with the usual and customary cogwheels, shaftings, and other mechanical devices. The entire machinery is stationed on the car, except the elevators, which extend to the ground beside the car. The six or eight men employed about the plant while in operation stand on platforms a few feet in width, constructed on each side of the car even with its floors or base. There are no sides to the car, no roof over it, except for the protection of parts of the machinery, and the whole cannot be said to be a building or inclosure of any kind, character, or description. The car is moved about from place to place on the ordinary railroad tracks as required by the convenience or necessities of the defendant in the prosecution of its work. When desired for use at any particular point a side track is constructed from the main track, the car is moved onto the side track,

and the temporary track is then removed from behind it, until it becomes necessary to return it to the main track for transportation to some other point. The temporary side track is then replaced and connected up.

The foregoing is a brief, but sufficiently accurate, description of the plant or machinery in question for the purposes of this opinion.

The plaintiff was employed by the defendant to work around and about this machinery as an engineer in the city of Walla Walla, and while so employed came in contact with an unguarded coupling or shafting, and received severe injuries to his person, for which a recovery is here sought. The defendant challenged the legal sufficiency of the testimony to warrant a verdict against it, first, by motion for a nonsuit at the close of the plaintiff's testimony; second, by motion for a judgment in its favor at the close of all the testimony, and now, after verdict in favor of the plaintiff, by motion for judgment notwithstanding the verdict. The sole question presented by these several motions is this: Was this plant, machinery, or whatever we may style it, a "factory," "mill," or "workshop" within the meaning of the factory act, found in chapter 84 of the Washington Laws of 1905, as amended by chapter 205 of the Laws of 1907?

[1] The titles of the several factory acts of this state have been identical, viz., "An act providing for the protection and health of employés in factories, mills or workshops, where machinery is used," etc.; and, while it was formerly held that the title formed no part of an act, it is now well established, in both England and the United States, that, where the meaning of the body of an act is doubtful, reference may be had to the title to remove the ambiguity or to supply an omission. This is especially true where there is a constitutional requirement that the subject or object of the act must be expressed in the title. 36 Cyc. 1133. Const. Wash. art. 2, § 19. We need not dwell longer on this subject, however, for in the present instance the title and the body of the act are harmonious and consistent throughout.

Thus, section 1 of the act of 1905, as amended by section 1 of the act of 1907, declares:

"That any person, firm, corporation or association operating a factory, mill or workshop where machinery is used shall provide and maintain in use, * * * reasonable safeguards for all * * * shafting, coupling, * * * and machinery of other or similar description, which it is practicable to guard, and which can be effectively guarded with due regard to the ordinary use of such machinery and appliances, and the dangers to employés therefrom, and with which the employés of any such factory, mill or workshop are liable to come in contact while in the performance of their duties. * * *"

Section 2 of the act of 1905 provides that:

"Every factory, mill or workshop where machinery is used and manual labor exercised by the way of trade for the purposes of gain within an inclosed room * * * shall be provided in each workroom thereof with good and sufficient ventilation," etc.

Section 3 of the act of 1905 provides that:

"The openings of all hoistways, hatchways, elevators and well holes and stairways in factories, mills, workshops, storehouses, warerooms or stores, shall be protected where practicable, by good and sufficient trapdoors, hatches, fences, gates, or other safeguards," etc.

Section 4 of the act of 1905, as amended by section 2 of the act of 1907, provides that it shall be the duty of the Commissioner of Labor annually, and from time to time, to examine all factories, mills, workshops, warehouses, warerooms, stores, and buildings, and machinery and appliances therein contained, to which the provisions of the act are applicable. Section 5 of the act of 1905, as amended by section 3 of the act of 1907, provides:

"That any person, firm, corporation or association carrying on business to which the provisions of the act are applicable, shall have the right to make written request to the Commissioner of Labor to inspect any factory, mill or workshop, and the machinery therein used, and any storehouse, wareroom or store, which said applicant is operating. * * * "

Section 6 of the act provides that the employé of any person, firm, corporation, or association shall notify his employer of any defect in or failure to guard the machinery, appliances, ways, works, and plants with which or in and about which he is working, and that the employé may complain to the Commissioner of Labor of any such defects or failure to guard such machinery. Section 7 of the act of 1905, as amended by section 4 of the act of 1907, provides that whenever, upon examination or re-examination of any factory, mill, or workshop, store or building, or the machinery or appliances therein to which the provisions of the act are applicable, the property so examined and the machinery and appliances therein conform in the judgment of the Commissioner of Labor to the requirements of the act, he shall issue a certificate, etc.; that a copy of the certificate shall be kept posted in a conspicuous place on every floor of all factories, mills, workshops, warehouses, warerooms, or stores, to which the provisions of the act are applicable, and that, if the provisions of the act have not been complied with, the Commissioner of Labor shall notify the person operating the mill, factory, or workshop of that fact.

It will thus be seen that the act speaks of employés in factories, mills, or workshops, and of employés of factories, mills, and workshops; of factories, mills, or workshops and the machinery therein used or therein contained, and of factories, mills, and workshops, warehouses, warerooms, stores, and buildings. Such language leaves little room for construction. The term "factory" has been defined as follows:

"'Manufactory' and 'factory' are different forms of the same word. 'Manufactory' has been defined as 'a house or place where anything is manufactured,' and 'factory' as a building, or collection of buildings, appropriated to the manufacture of goods. But a manufactory is something more than a building. It includes not only the building, but the machinery necessary to produce the particular goods manufactured and the engines or other power necessary to propel such machinery. It seems, however, that mechanical power and machinery are not always essential to the existence of a factory. A single factory may include several buildings. And 'factory' is not synonymous with 'mill,' the former being a general term, while the latter is a specific term, and a factory may contain several mills. Various establishments have been held to be factories or manufactories under certain statutes, and the statutory meaning is sometimes wider than the common definition." 26 Cyc. 530.

"Mill" is defined by Webster as "a common name for various machines which produce a manufactured product, or change the form of a raw material by the continuous repetition of some simple action; as a sawmill; a stamp mill, etc." Also as "a building or collection of buildings with machinery by which the processes of manufacture are carried on; as a cotton mill, a powder mill, a rolling mill." The same authority defines "shop" as "a small establishment * * * or building devoted to a particular line in a factory or large establishment, in which mechanics or artisans work; as a shoe shop, a car shop, a machine shop." And "workshop" as "a shop where any manufacture or handiwork is carried on." The only one of these definitions that would or could embrace the machinery in question is the definition sometimes given of a "mill." The meaning of the word "mill," however, in this statute must be ascertained from the context. "In accordance with the maxim, 'Noscitur a socis,' the meaning of a word used in a statute must be construed in connection with the words with which it is associated. Where several words are connected by a copulative conjunction, they are presumed to be of the same class, unless the contrary intention appears." 36 Cyc. 1118. When, therefore, the word "mill" is used in connection with the words, "factory," "workshop," "warehouse," "wareroom," "store," and "building," it can only mean "a building or collection of buildings with machinery by which the processes of manufacturing are carried on." A statute of New Jersey provides:

"That the belting, shafting, gearing and drums in all factories and workshops when so placed as to be dangerous to persons employed therein while engaged in their ordinary duties shall be securely guarded when practicable, if otherwise then a notice of its dangers shall be conspicuously posted in the factory or workshop." 2 Gen. St. p. 2345.

In Griffith v. Mountain Ice Co., 74 N. J. Law, 272, 65 Atl. 853, it was held that the provisions of this statute did not apply to shafting used in harvesting natural ice; the court saying:

"We think that the defendant's plant does not come within the statutory language 'factories and workshops,' not only because those words import a building in which the machinery is so placed as to be dangerous to operatives, but also, and chiefly, because such words in their statutory context imply that the places to which they refer are those where machinery is employed in the work of fabrication; i. e., of making or manufacturing something. Such is the common meaning of a factory or workshop. Obviously the statute was not intended to apply to all cases in which shafting, belting, and gearing were employed; for, if that had been the legislative purpose, the limitation 'in factories and workshops' would not have been used. Some meaning must, therefore, be given to these words of limitation, and the one I have suggested is that naturally arising from the context. The use of the word 'operatives' in the title of the original act also lends color to this construction."

The force of the opinion in this case is somewhat lessened by the fact that the decision of the court was placed chiefly on another ground, but the court nevertheless explicitly decided that the provisions of the statute applied only to belting, shafting, and gearing in factories and workshops.

In Ward v. National Lumber & Box Co., 54 Wash. 304, 103 Pac. 1, the court said:

"The act further provides for ventilation and sanitary conditions, guarding of trapdoors and hatchways, etc.; so that it will be seen from a reading of the act that the evident intention of the Legislature was to protect operatives in factories in every manner and in every particular in which they could be protected consistent with the reasonable operation of the particular factory which was engaged in business."

In Rabe v. Consolidated Ice Co., 113 Fed. 905, 51 C. C. A. 535, in speaking of the New York factory act, the court said:

"The purpose of the statute is to throw a safeguard around the workmen employed in business establishments where machinery is in use which may endanger those who are likely to be brought into contact with it, and to whom its presence, if it is not protected, is a constant menace. So far as is consistent with the language of the statute, that purpose should be given effect."

In the cases last cited the question now under consideration was not involved, but the language of the courts is significant as it shows the impression a reading of the act at once conveys, and the first impressions of a well-trained, active mind are usually correct.

Counsel for plaintiff have quoted the act of March 14, 1911 (Laws 1911, p. 345), defining the terms "factories," "workshops," and "mill," and claim that this is a legislative construction of similar words in the pre-existing statute. The following are the definitions given:

" 'Factories' mean undertakings in which the business of working at commodities is carried on with power-driven machinery, either in manufactures, repair, or change, and shall include the premises, yard and plant of the concern."

" 'Workshop' means any plant, yard, premises, room, or place wherein power-driven machinery is employed and manual labor exercised by way of trade for gain or otherwise in or incidental to the processes of making, repairing, engraving, printing, or ornamenting, finishing or adapting for sale or otherwise any articles or part of articles, machine or thing, over which premises, room, or place the employer of the person working therein has a right of access or control."

" 'Mill' means any plant, premises, room, or place, where machinery is used, in processes of manufacturing, changing, altering, or repairing any articles or commodity for sale or otherwise, together with any yards or premises which are a part of the plant, including elevators, warehouses, and bunkers."

No doubt a legislative construction of the language of a previous act is sometimes entitled to great consideration by the courts, but it is by no means conclusive, and the rule itself has no application where the earlier act is free from ambiguity. "Indeed, the cases are so numerous in this court to the effect that the province of construction lies wholly within the domain of ambiguity that an extended review of them is quite unnecessary The whole doctrine applicable to the subject may be summed up in the single observation that prior acts may be resorted to to solve, but not to create, an ambiguity." Hamilton v. Rathbone, 175 U. S. 414, 421, 20 Sup. Ct. 155, 44 L. Ed. 219. I look upon the act quoted as a legislative recognition of the self-evident fact that the language of the previous statute was not broad or comprehensive enough, and did not include all the machinery and all the appliances that should be safeguarded. Nearly every legislative act on this subject defines the terms used to describe the factories,

places, and machinery to which the act is intended to apply. These definitions are often purely arbitrary, and are given for the sole purpose of avoiding repetition. Thus by the act of 1911 the Legislature might well have declared that the term "factory" should include all the buildings, places, and premises defined under the three terms there used.

[2] The injury in this case occurred long prior to the passage of the act of 1911, and the rights of the parties cannot be affected by subsequent legislation. There is no limit to the power of the Legislature in defining terms. It has declared that the male shall include the female; that the singular shall include the plural; that the word "person" shall include "corporation." And it is entirely within its province to declare that the night shall include the day; but it would be idle to claim that such a legislative declaration would be binding upon the courts in construing a pre-existing statute. As said in Bingham v. Winona County, 8 Minn. 441 (Gil. 390), "the opinion of a subsequent Legislature upon the meaning of a statute, is entitled to no more weight than that of the same men in a private capacity;" and this is doubly true where the previous statute is free from doubt or ambiguity.

The plaintiff candidly admits that the act does not apply to or include all shafting, coupling, and machinery, and that certain classes of machinery fall within and others without the provisions of the statute. The line of demarcation must therefore be drawn some place, and, if it is not drawn between machinery in factories, mills, and workshops, as those terms have been defined by lexicographers, law-writers, and courts, and machinery in other places, I confess I do not know where the border line between the two classes of machinery can be said to lie. The plant in this case does not differ from the threshing machine, the steam shovel, the wrecking car, and many other mills, machines, and appliances that might be named. Indeed, it differs in degree and not in kind from the concrete mixers and asphalt mixers which we see in use every day on the streets of our cities, and it will scarcely be claimed that these are factories, mills, or workshops.

In reaching this conclusion I have avoided the rule of strict construction; for, while the statute is in derogation of the common law and imposes a penalty for its violation, yet, like the hours of service act, the safety appliance act, and other acts intended for the protection of the public, or of employés, it should receive a fair and reasonable construction for the purpose of giving full effect to the legislative intent.

But no construction of the act within reason will save the rights of the plaintiff, and the motion for a judgment in favor of the defendant, notwithstanding the verdict of the jury, must therefore be granted, and it is so ordered.