## WOOLFE v. OHIO OIL CO.

(Circuit Court of Appeals, Sixth Circuit. February 12, 1923.)

### No. 3730.

1. Negligence ⚌136(10)—Contributory negligence for jury on conflicting evidence.

Where there is a conflict of evidence or doubt as to the deductions inferable therefrom, contributory negligence is for the jury.

2. Master and servant ⚌289(28)—Contributory negligence of oiler in failing to stop engine held for jury.

In action by the operator of a gas engine for injuries while oiling it from having his clothing caught by projecting bolts or nuts left unprotected in violation of Gen. Code Ohio, § 1027, plaintiff's contributory negligence in failing to stop the engine before oiling it was for the jury, on conflicting evidence, both as to whether the safer method of oiling was to stop the engine or to oil it while running to avoid the dangers incident to starting it again, and also as to plaintiff's negligence in adopting the usual and customary method—oiling the engine while running—which was shown by practically undisputed evidence to have been employed on the premises for substantially four years prior to the accident and which plaintiff observed his predecessor had adopted when plaintiff went there with defendant's superintendent at the latter's request, for the purpose of becoming acquainted with his duties.

3. Master and servant ⚌121(5)—Requirement for guarding machinery in "shops and factories" held applicable to gas engine in pumping station."

Gen. Code Ohio, § 1027, as to safeguarding machinery, held to include by its definition of "shops and factories" a gas engine in small pumping station, supplying power for pumping adjoining oil wells.

[Ed. Note.—For other definitions, see Words and Phrases, Shops and Factories.]

4. Master and servant ⚌405(3)—Evidence held not to show acceptance of Workmen's Compensation Act.

In servant's action for injuries, where defendant claimed plaintiff elected to accept compensation under the Workmen's Compensation Act of Ohio, evidence held to show that he received and retained checks from his employer, not as compensation under the act, but as a continued payment of his salary during disability.

In Error to the District Court of the United States, for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Action by George Woolfe against the Ohio Oil Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

The plaintiff in error, George W. Wolfe, filed his petition in the district court to recover damages for personal injury sustained by him while in the employ of the Ohio Oil Company as a pumper of oil wells in Carroll county, Ohio. One of the duties incident to his employment was the operation and care of a gas engine located in a small building called a pumping station, which supplied the power for pumping the several wells adjacent thereto. There were two such engines and pumping stations in his charge, and it was also a part of plaintiff's duty to look after the wells and the lines connecting them to one or the other of these stations. The plaintiff had been employed in the pumping of gas wells for about a year previous to entering into the employ of the defendant, and had been in the defendant's employ about six months prior to the time he sustained the injuries complained of. It is averred in his petition that the defendant, the Ohio Oil Company, failed to comply with the lawful requirement for the protection of the lives, health, and safety of employees as provided in section 1027 of the General Code of Ohio, in that cer-

⚌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tain bolts, nuts, clutch dogs, and the like projected unevenly from the surface of revolving portions of the machinery, and that while plaintiff was engaged in the performance of his duty in the oiling of this engine, his coat and clothing came in contact with these bolts, nuts, or cotter pins, then and there uncovered and unprotected, causing plaintiff to be drawn over against and into this revolving engine, resulting in serious personal injuries to him.

The defendant admitted that plaintiff was employed by it to perform the duties mentioned in the petition, that plaintiff was injured while in its employ, and denied each and every other allegation in the petition. For a second defense the defendant averred that it had fully complied with all the requirements and provisions of the Workmen's Compensation Act of Ohio (Gen. Code, §§ 1465—37 to 1465—108), and that the negligence of plaintiff directly and approximately contributed to the accident. For a third defense the defendant averred payment to plaintiff and his acceptance of compensation under and as provided by the Workmen's Compensation Act of Ohio, for several months next succeeding the accident and injury, and the tender of additional compensation and plaintiff's refusal to accept the same. To this answer the plaintiff filed a general denial.

At the close of all the evidence the trial court sustained a motion to direct a verdict for the defendant, upon which verdict a final judgment was entered.

W. P. Barnum and E. H. Moore, both of Youngstown, Ohio (Moore, Barnum·& Hammond, of Youngstown, Ohio, and Metzger & McCarthy, on the brief), for plaintiff in error.

Merle N. Poe, of Findlay, Ohio, and Alex. L. Smith, of Toledo, Ohio (Smith, Beckwith & Ohlinger, of Toledo, Ohio, on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). The trial court sustained the motion of the defendant for a directed verdict upon the sole ground that the evidence disclosed the plaintiff was guilty of contributory negligence as a matter of law. Evidence was introduced on the part of the defendant tending to prove that the plaintiff could have oiled this engine with safety to himself by stopping it during the oiling operation and starting it again after the oil had been supplied; that the engine could have been stopped by giving a quarter turn to the lever of the gas valve to shut off the gas and almost as easily started again; that the plaintiff did not adopt this safe method of performing his work, but, on the contrary, undertook to oil the engine while it was in operation.

The plaintiff introduced evidence tending to prove that the starting of this engine was dangerous for the reason that it was necessary for him in starting it to throw his full weight upon the large flywheel by "tramping" upon the spokes to force compression of the gas in the engine cylinder; that when the gas exploded in the cylinder it started the flywheel in the opposite direction; that unless the operator was exceedingly vigilant and active he would be thrown by the recoil of the flywheel into the machinery and unprotected gears or against the side of the engine house; that upon one occasion he had been so thrown from the flywheel of the engine against the side of the building; that the starting of this engine presents a further danger in that immediately after it is started it is necessary for the operator to reach over the exposed projecting parts of the revolving machinery to adjust the screws

and gauge controlling the supply of gas; and that this is equally as dangerous as oiling the engine while in motion.

Further evidence was introduced by the plaintiff tending to prove that during his experience of 18 months in this character of work he had been oiling gas engines, including this one, while in motion; that, when he was employed by the defendant, he was directed to go down and look over the lease and get accustomed to the gas lines and shut offs and such things; and that in obedience to these instructions he did go upon the premises, in company with Mr. Chapman, the defendant's district superintendent, and while there observed the man then in charge oiling the engine. This man, Sheldon Morrow, had been in the employ of the defendant company for over 3½ years prior to the time of plaintiff's employment. He testified that he was running the engine on the day the plaintiff came there with Mr. Chapman, that the engine would not run all day without a second oiling, and that he never stopped the engine to oil it. The witness Ferguson, who succeeded the plaintiff in the operation of these pumping stations, also testified to the same effect in reference to the necessity of oiling this engine a second time each day, and that he does not stop the engine to oil it.

[1] Negligence is never presumed, and the burden of proving negligence, by a preponderance of the evidence, rests upon the party asserting it. The question of the existence of contributory negligence is a question of fact for the jury. Where there is a conflict of evidence or where there is any doubt as to the deductions that may be drawn therefrom, the question should be submitted to the jury. Southern Pacific Co. v. Pool, 160 U. S. 438, 16 Sup. Ct. 338, 40 L. Ed. 485; Patton v. Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; Western Union Tel. Co. v. Baker, 140 Fed. 315, 72 C. C. A. 87.

[2] In this case there is a substantial conflict in the evidence as to which is the safer method of oiling this engine. That question should have been submitted to the jury. There is practically no dispute in the evidence that the plaintiff at the time of his injury was oiling this engine in the usual and ordinary way in which it had been oiled for a number of years before and since the accident, and, even if the jury had found that it would have been a safe way or a safer way to stop the engine before attempting to oil it, the further question should have been submitted to it whether the plaintiff, in the exercise of his judgment as to the safer way, was guilty of contributory negligence in adopting the usual and ordinary method that had been employed in the performance of this service, upon this lease, for substantially four years prior to the accident and which he had observed that his predecessor had adopted when he went there in company with the defendant's superintendent, Chapman, and at Chapman's request, for the purpose of becoming acquainted with his duties. Ry. Co. v. Brown, 229 U. S. 317, 33 Sup. Ct. 840, 57 L. Ed. 1204; Jones v. Ry. Co., 128 U. S. 443, 9 Sup. Ct. 118, 32 L. Ed. 478; Cement Co. v. Lamandola, 227 Fed. 823, 142 C. C. A. 347.

[3] It is insisted, however, that regardless of the reasons given by the trial court, the defendant was entitled to a directed verdict for the reason that section 1027 of the General Code of Ohio is not applicable

to the case at bar. This section specifically enumerates certain require-
ments in shops and factories for the protection of the lives and safety
of employees. The requirements therein specified are lawful require-
ments within the meaning of the Workmen's Compensation Law of
Ohio, which expressly provides that for injuries arising from the fail-
ure of an employer or any of such employers, officers, or agents to
comply with any lawful requirements for the safety and lives of the
employees, the injured workman shall have the right at his option to
institute proceedings in the courts for damages on account of such in-
juries or claim compensation under the Workmen's Compensation Act.
It appears from the language of section 1027 that its purpose is to re-
quire employers to make suitable provisions to prevent injuries to per-
sons who use or come in contact with machinery. This section is part
of chapter 12, div. II, of title III of the General Code of Ohio. Sec-
tion 1002, G. C., is also a part of the same chapter, and reads as fol-
lows:

"The term 'shops and factories' as used in this chapter shall include the
following: Manufacturing, mechanical, electrical, mercantile, art and launder-
ing establishments, printing, telegraph and telephone offices, railroad depots,
hotels, memorial buildings, tenement and department houses."

This definition of "shops and factories" is comprehensive enough to
include any building in which there are mechanical appliances or ma-
chinery of the kind contemplated by section 1027, G. C., and with
which employees may come in contact. Thomas v. R. R. Co., 112
Minn. 360, 128 N. W. 297; Rabe v. Ice Co., 113 Fed. 905, 51 C. C. A.
535.

[4] It is also claimed on behalf of defendant in error that even if
section 1027, G. C., applies, plaintiff elected to accept compensation un-
der the Workmen's Compensation Act of Ohio and received and re-
tained money paid to him as compensation by his employer under the
provisions of that act. It is admitted that the defendant complied with
the provisions of this act and elected and was authorized directly to
compensate its injured employees or their dependents. Evidence was
offered tending to prove that subsequent to March 30, 1919, the date
upon which plaintiff received the injuries, the defendant forwarded to
plaintiff, semimonthly, its usual pay roll check for the months of April,
May, and June. These checks or vouchers recited upon their face that
they were for balance in full for services rendered to the company to
the date therein named as per terms of the engagement. These checks
were received and cashed by the plaintiff and the proceeds thereof re-
tained by him. These payments were reported by defendant to the In-
dustrial Commission of Ohio as payments made for compensation to
the injured workman under the provisions of the Ohio Workmen's
Compensation Act, but the plaintiff had no knowledge that such reports
were being made to the Industrial Commission. It further appears
from the evidence that the payments so made were largely in excess of
the compensation that plaintiff was entitled to receive under the Work-
men's Compensation Act; but, on the contrary, they were for the exact
amount of the wages he had been receiving and that he would have
received if the defendant elected to keep him on its pay rolls while

temporarily disabled from performing service by injuries he sustained in its employment. Plaintiff made no application for compensation under the provisions of the Workmen's Compensation Act either to the Industrial Commission or to the defendant. His letter of May 7th, directed to the Industrial Commission of Ohio, tends to prove that he did not at that time understand that these salary checks were being sent to him as compensation. The substance of that letter is as follows:

"I am writing you in regard to my accident, which I lost my right hand and had my leg broken and body badly bruised. This has been almost six weeks. You was notified by the Ohio Oil Company from Steubenville, the company which I worked for, I have not heard from you. Will you send me papers and pamphlets to me at 54 West Seventh street, Salem, Ohio."

On May 16, 1919, the director of claims of the Industrial Commission of Ohio replied to this letter, in part, as follows:

"The Ohio Oil Company has filed with us a report saying that you have received compensation on a temporary total basis to April 30, 1919. Furthermore, that you have been paid a full wage during that period."

It is insisted upon the part of the defendant that if the plaintiff had no knowledge prior to the receipt of this letter that these salary checks were sent him as compensation under the provisions of the Workmen's Compensation Act, this letter fully advised him of that fact, and his acceptance of salary checks thereafter was an election by him to accept compensation under the provisions of that act. This conclusion does not necessarily follow for the reason that the letter states, not merely that the plaintiff had received compensation to April 30th, but also that he had been paid his full wages during that period. The plaintiff testified that he supposed the company was continuing to pay him wages as it had done once before when he was sick and unable to work. This letter is subject to no construction other than that defendant had reported to the Industrial Commission that it was paying plaintiff both wages and compensation. That the plaintiff so construed it is evidenced by his letter to the Industrial Commission dated June 13th, which reads as follows:

"I received your letter of May 16th, but I do not understand the same. I have been paid nothing since I have been injured except the Ohio Oil Company has been paying me my salary every two weeks. Thir manager told me they would take care of me and I never asked for compensation from you."

In addition to this, the plaintiff testified that when he received and accepted these checks he did not understand that they were intended for compensation, but believed they were paid to him as salary. The evidence of plaintiff in reference to this proposition is materially strengthened by the fact that immediately upon receipt of the check dated July 28, 1919, for $40, and purporting on its face to be on account compensation under section 1465—80, General Code of Ohio, he very promptly returned it with the following letter:

"I am returning your check dated July 28th for $40 payable to me. The check is marked 'Compensation under the General Code of Ohio.' I do not understand this, but Mr. Chapman told me the company would take care of me on account of my lost arm and my other bad injuries and I expect the company to do as Chapman says."

The sending of this check was the first open, frank, and positive declaration on the part of the defendant that it was intended as compensation and not as salary and the response was prompt and just as clear and positive. The plaintiff further offered in evidence two letters signed by F. H. Chapman, district superintendent of the Southwestern division of the Ohio Oil Company. One of these letters refers to the fact that the writer, Mr. Chapman, had sent the plaintiff a check for the first half of May and asked the plaintiff to meet him, so that he could arrange to pay the hospital and doctor bills. The other letter called attention to the fact that the Ohio Oil Company had been nice to the plaintiff since his injuries and had paid his salary just the same as if he were working. The court sustained an objection to the introduction of these letters upon the theory that there was no testimony offered tending to prove that Mr. Chapman had authority to conclude the company by any notions of his own. These letters were not offered in evidence for the purpose of binding the company, but solely for the purpose of showing the good faith and understanding of the plaintiff in reference to the purposes for which these pay roll checks were sent and accepted. Certainly this plaintiff in forming his judgment upon that proposition might reasonably take into consideration statements made by the superintendent of the company who was authorized by the company to employ him, assign him his duties, and control him in the performance thereof. Even without these letters, there is enough evidence in this record upon which the jury might properly have found that each, and all of these checks were accepted by the plaintiff in good faith and in the honest belief that the company was continuing to pay him his salary while suffering from these injuries as it had done for two weeks on a former occasion when he was sick and unable to work.

For the reasons above stated, the judgment of the District Court is reversed, and the cause remanded for further proceedings and trial in accordance with this opinion.