[No. 8023.    Department Two.    July 29, 1909.]

FRANK R. WARD, *Respondent*, v. NATIONAL LUMBER & BOX COMPANY, *Appellant*.[1]

MASTER AND SERVANT—GUARDING MACHINERY—FACTORY ACT—STATUTES—CONSTRUCTION—EJUSDEM GENERIS. The factory act, Laws 1903, page 40, requiring the safeguarding of certain specified machines of various kinds, "and machinery of other or similar description" in factories, will not be confined to the subjects mentioned on the theory of *ejusdem generis*, but includes friction wheels not named, since the rule has no application where the specified subjects greatly differ from one another and where such construction would violate the evident intent of the legislature.

[1]Reported in 103 Pac. 1.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. An oiler is not guilty of contributory negligence, as a matter of law, in attempting to take hold of a grease cup with his left hand instead of his right, where it would have been inconvenient to do so, and it does not appear to have been any safer to use his right hand.

SAME—ASSUMPTION OF RISKS—OBVIOUS DANGERS. Knowledge that a grease cup was apparently too dangerous to be used, as conceived and constructed by the master, is not to be imputed to an oiler, where he had used it for three weeks without injury.

MASTER AND SERVANT—ASSUMPTION OF RISKS—NOTICE OF DANGER TO MASTER. It is not incumbent upon an oiler to report to the master as to the dangerous condition of machinery due to the original construction and arrangement, and not to want of repairs.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered January 8, 1909, upon the verdict of a jury rendered in favor of the plaintiff for personal injuries sustained by an employee in a factory. Affirmed.

*W. H. Abel* and *A. M. Abel*, for appellant.

*Govnor Teats, Hugo Metzler*, and *Leo Teats*, for respondent.

DUNBAR, J.—This is an appeal by the National Lumber & Box Company, from a judgment rendered against it in the sum of $2,000, in a suit brought by respondent, Frank R. Ward, for personal injuries received by him in its employ. The injury was the loss of his left hand, which was cut and torn off between the grease cup and friction wheel while he was lubricating a bearing.

The friction wheel drives the set works to the double cut-off saw. In order to oil the bearing, it was necessary to mount a ladder and walk along a plank. The friction wheel revolved upon a shafting. The boxing of the shaft was fastened to a timber, known as a bridge tree. The oiler had to go in a stooping position, reach through between two horizontal timbers, and oil the bearing. To lubricate this bearing, there

was an oil extension pipe and patent cup, the pipe being between two and three feet long, fastened in the boxing, and extending therefrom to where the oiler stood.   There was also a patent grease cup fastened in the boxing, consisting of a pipe about six inches long, with cup attached, screwed into the boxing at a distance of about three-fourths of an inch from the  spokes of the friction wheel.

Ward had used the oil cup for the purpose of lubricating this bearing for about three weeks before the accident, when he found the grease cup placed there, as he supposed, for him to use; and from that  time until the accident he did use the grease cup to lubricate the bearing.   He testified that he had been instructed to economize the oil as it was very expensive, and to use the grease when it could be used, and that he was undertaking to follow out what he supposed was the will and desire of his employers in using the grease instead of the oil.   In turning the grease cup, his hand was sucked in, as he says, by the wheel, and was cut off.

The case was tried to a jury.   At the close of the respondent's case, motion was made for nonsuit, which motion was overruled.   The case went to trial.   The defense introduced testimony in support of its contention that the respondent had been guilty of negligence, and had assumed the risk, and that there was no negligence on the part of the appellant. The motion was repeated at the end of the whole case, and refused, and the case submitted to the jury, with the verdict mentioned above, viz., the sum of $2,000, for which judgment was entered.

There are two principal contentions of the appellant in this case, viz.:  (1) that the factory act does not in terms require friction wheels to be guarded, and that therefore the respondent should be charged with the assumption of risk in operating a machine which was noticeably dangerous; and (2) that the respondent was guilty of contributory negligence in operating said machine in the way he did operate it.

The factory act provides for reasonable safeguards for

all vats, pans, trimmers, cut-off, gang edger, and other saws, planers, cogs, gearings, belting, shafting, couplings, set screws, live rollers, conveyors, mangles in laundries and machinery of other or similar description.    The enacting clause is:   "An act providing for the protection of employes in factories, mills or workshops where machinery is used."   Laws, 1903, p. 40.   The act further provides for ventilation and sanitary conditions, guarding of trap-doors and hatchways, etc.; so that it will be seen from a reading of the act that the evident intention of the legislature was to protect operatives in factories in every manner and in every particular in which they could be protected, consistent with the reasonable operation of the particular factory which was engaged in business.    The appellant invokes the rule of *ejusdem generis*, and insists that the friction wheel, not being specified in the factory act and not being of the same kind or genus as any of the machinery specially mentioned, does not fall under the head of machinery of other or similar description, and that therefore the assumption of risk attaches in this kind of a case.   Considering the whole scope of the factory act and the evident intention of the legislature, we are unable to reach the conclusion contended for by the appellant.    There is no doubt that the general rule is that the general word must take its meaning and be presumed to embrace only things or persons of the kind designated in the specific words; but, as is said in 26 Am. & Eng. Ency. Law (2d. ed.), p. 610, the object of the rule in question being not to defeat but to ascertain and effectuate the legislative intent, it will not be applied where the application would be in the face of the evident meaning of the framers of the law. In other words, the maxim has no application where there is no room for construction but only when the meaning is not apparent from the language itself; and it is also said,

"Nor does the rule obtain where the specific words signify subjects greatly different from one another, for here the general expression might very consistently add one more

variety; in such case, the general term must receive its natural and wide meaning."

This is peculiarly the case under our statute, where the specific words signify subjects greatly different from one another, vats, pans, trimmers, cut-off, gang edger and other saws, planers, cogs, gearings, belting, shafting, coupling, set screws, live rollers, conveyors, mangles in laundries, etc., all or nearly all, being machinery or parts of machinery of different character. · We think, in the face of the statute, it would be doing violence to the evident intention of the legislature to hold that the duty to guard the machinery in question was not imposed upon the millowner; and the testimony is undisputed that this machine could have been guarded without affecting the efficiency of its operation.

It is also strenuously contended that the respondent was guilty of contributory negligence in using a machine which was manifestly dangerous, and in using it in the manner in which he did use it. A persistent attempt was made during the trial of the cause, as shown by the record, to show that it was negligence for the respondent to take hold of the cup with his left hand instead of his right; but outside of the fact that there is nothing to indicate that the cup could not be manipulated as safely with the left hand as with the right, the testimony of all the respondent's witnesses, as well as his own testimony, was to the effect that it would have been inconvenient to have used his right hand owing to the manner in which the cup had to be approached by the oiler. We are speaking now exclusively of the testimony of the respondent, any conflicting testimony on that subject which was submitted by the appellant having been submitted to the discretion of the jury; and assuming that the testimony of the respondent was true, we are unable to determine that the use of this machine in the way in which it was used was contributory negligence as a matter of law.

Nor is it reasonable to our minds to impute to the respondent the knowledge of the dangerous condition of the machine

to such an extent that it was apparently too dangerous to be used with safety, when the undisputed testimony shows that it had been used by the respondent for three weeks prior to the accident, and when it had been established, in the condition in which it existed, by the appellant itself. It could scarcely be said with reason that the minds of reasonable men could not differ on that subject, when the machine was conceived and constructed by the appellant, and placed there for practical operation by its employees.

There is some contention by the appellant that it was the duty of the oiler to report to the appellant when the machinery was found in a dangerous condition. But this duty and instruction certainly did not have reference to the original construction of the mill and arrangement of the machinery; but only to any machinery that had become dangerous by misplacement or accident of any kind.

On the whole we are unable to find any reversible error in the record, and the judgment will therefore be affirmed.

RUDKIN, C. J., MOUNT, CROW, and PARKER, JJ., concur.