## SULZBERGER & SONS CO. OF OKLAHOMA v. STRICKLAND.

No. 7813.    Opinion Filed June 6, 1916.

Rehearing Denied September 1, 1916.

(159 Pac. 833.)

**1. Pleading—Reply—Right to File.**

On the day of the trial the court, over the objection and exception of the defendant, permitted the plaintiff to file a reply to the answer of defendant. In the light of section 6005, Rev. Laws of Oklahoma 1910, this action complained of by the defendant on the part of the trial court did not constitute any substantial violation of any statutory right of the defendant. This section was in full force at the time the trial court permitted plaintiff to file his reply and make the amendment complained of.

**2. Negligence — "Actionable Negligence"— What Constitutes.**

To constitute "actionable negligence" upon the part of defendant where the wrong is not willful and intentional, three essential elements are necessary: (1) There must be some duty owing by it to the plaintiff; and (2) a failure upon its part to perform that duty; and (3) injury proximately resulting to the plaintiff from such failure upon its part. C., R. I. & P. v. Duran, 38 Okla. 719, 134 Pac. 876.

**3. Master and Servant—Injuries to Servant—Duty of Master.**

The master is bound to exercise reasonable care and diligence to provide a reasonably safe place in which the employee or servant is to work, and also reasonably safe machinery, tools, and appliances with which to work, and to supply the servant with reasonably safe materials upon which to perform the work required of him.

**4. Same—Care—Question for Jury.**

In cases like the one at bar, which turn on the question whether the party exercised ordinary care or was guilty of negligence, after the usual appropriate definitions of these particular terms by the court, it is the province of the jury to say, from a consideration of the evidence, whether in the particular case ordinary care was exercised, or whether there was negligence. In other words, what is ordinary care or what is negligence in the particular case is a

question of fact for the jury, and not of law for the court.

#### 5. Same—Appliances—Statutes.

"3746, Machinery to have Safety Devices. The owner or person in charge of a factory or any institution where machinery is used shall provide belt shifters or other mechanical contrivances for the purpose of throwing belts on or off pulleys, whenever practicable. All machines shall be provided with loose pulleys and all vats, pans, planers, cogs, gearing, belting, shafting, setscrews and machinery of every description shall be properly guarded. * * *

"3756. Penalty for Violating this Article. Any person who fails to comply with any of the provisions of this article shall be deemed guilty of a misdemeanor, except as otherwise provided, and on conviction thereof shall be fined in a sum not less than ten dollars nor more than one hundred dollars for each offense."

#### 6. Same—Actions—Instructions.

The trial judge in this case charged the jury under the Factory Act, and also went further and charged the jury as to the law touching the duty of the defendant to furnish the plaintiff with a reasonably safe place in which to work and reasonably safe machinery with which to work, and also charged the jury concerning the assumption of risk. Had the court simply charged the jury under the Factory Act, then it would not have been necessary to have charged them as to the common-law liability as to a reasonably safe place in which to work, and reasonably safe machinery with which to work and the defense thereto of assumption of risk. But, having done so by proper instructions, we see no reversible error therein.

#### 7. Same—Statutes—Jury Questions—"Negligence Per Se."

This Factory Act is a mandatory statute. The things expressly enumerated therein, together with machinery of every description, shall be properly guarded. This declares the fixed and settled public policy of the state touching these matters and things, and a violation of this act is made a crime and punishable as such. The sovereign, in order to afford greater and better protection to the lives and limbs of the subject who earns a livelihood by working with and around machinery, and in order to lessen the chances of accidents, has expressed her will in the solemn mandates of this mandatory and penal statute, which must be obeyed, and a failure to obey it becomes and is "negligence per se;" and those who disobey it are not entitled to the defense of assumption of risk, but may interpose the defense of contributory negligence. These matters were questions of fact for the jury. They were submitted to the jury. The jury by their verdict have found under the law

and the evidence that the defendant was negligent as complained of. This court will not disturb their verdict.

#### 8. Same—Statute—Construction—Ejusdem Generis.

The doctrine of ejusdem generis was applied in an Ontario case so as to limit materially the effect of the earlier statute. In Indiana the Supreme Court has been inconsistent in its construction of the statute providing: "All vats, pans, saws, planers, cogs, gearing, belting, shafting, setscrews and machinery of every description." The rule finally adopted is that the phrase, "machinery of every description," does not modify in any way the specific appliances mentioned, but embraces all other kinds of machinery, which would be too numerous for the Legislature to mention, although an earlier decision of the Supreme Court, to the effect that the general terms simply referred to other appliances of the same general description as those indicated by the specific terms, under the doctrine of ejusdem generis, was not in terms overruled. The doctrine of the Washington court is the same as that which appears to prevail in Indiana. And a somewhat similar view is taken of the statute in New South Wales.

#### 9. Same.

The doctrine of "ejusdem generis" is that where a general word follows particular and specific words of the same nature as itself, it takes its meaning from them, and is presumed to be restricted to the same genus as those words. The language here does not admit of the application of the ejusdem generis doctrine. The phrase "and machinery of every description" cannot be limited by the prior enumeration, for the reason that such enumeration is not an enumeration of machines at all—the genus of those words is not of the same nature as of "machinery of every description." A vat is not a machine; neither is a pan, nor a saw. Cogs, gearing, belting, shafting, and setscrews are not machines, but may each or all enter into and be a part of various machines. Since no enumeration of machinery precedes the general terms, there is nothing to limit those terms, and they are broad enough to cover any machine that is dangerous to life or limb, and which, without impairing its utility, can be guarded.

#### 10. Trial—Instructions—Contributory Negligence.

In an action for damages based on negligence, wherein contributory negligence on the part of the plaintiff is pleaded as a defense, and there is evidence tending to sustain such defense, an instruction which ignores the defense of contributory negligence in authorizing the jury to find the issues in favor of the plaintiff, according as the jury may determine certain facts in support of plaintiff's theory of his case, will not be held erroneous when the court immediately

follows said instruction with another, beginning with the words, "But, upon the other hand," etc., and correctly states the law of assumption of risk and of contributory negligence to the jury under the defendant's theory of the case.

## 11. Master and Servant—Injuries to Servant —Instruction.

Instructions examined, and held, on the whole, to substantially state the law applicable to the cause.

(Syllabus by Davis, C.)

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Action by Daniel W. Strickland against the Sulzberger & Sons Company of Oklahoma, a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

Keaton, Wells & Johnston, for plaintiff in error.

John R. Guyer, Robert A. Rogers, and T. E. Robertson, for defendant in error.

Opinion by DAVIS, C. For convenience the parties will be designated throughout this opinion as in the court below, the defendant in error as plaintiff, and the plaintiff in error as defendant.

Suit was filed in the district court of Oklahoma county by Daniel W. Strickland against Sulzberger & Sons Company, of Oklahoma, on the 14th day of December, 1914. The plaintiff in his petition alleges that on the 4th day of November, 1914, he was employed by the defendant company, which is engaged in the business of running a packing plant in the city of Oklahoma City; that in said packing plant there was a machine, commonly known as the "gut reel," used for the purpose of winding the intestines of cattle during the process of cleaning and preparing such intestines for use as casings for products of said packing plant, which said gut reel was composed of a certain large wheel made up of rim and spokes, which said spokes said defendant negligently maintained in an unguarded and unprotected condition, in that no protection was provided by defendant to guard against injury to plaintiff while passing near such gut reel in the performance of his duty; that a part of said machine consisted of a clutch, to which was connected a lever, the function of which was to throw the machine out of gear and stop said gut reel when in motion upon the sliding and shifting of said lever by the person desiring to stop said reel; that the defendant negligently maintained the said machine in a defective condition, so that the said lever would not work and perform its function of throwing out the said clutch and thus stopping the said machine; that said defendant knew of such unguarded and unprotected and dangerous condition, and that said condition had existed for a sufficient length of time that the defendant, in due exercise of ordinary care, should have known it; that the defendant negligently failed to provide necessary and proper receptacles and vessels for the handling of hog intestines about and near the machine, and as a result of said negligence of the defendant the slime and mucous was on the floor of the room in which said machine was located, rendering it very slick and dangerous for this plaintiff to walk upon in the course of his duties as an employee of the defendant; that it was the duty of the defendant to furnish plaintiff with a reasonably safe place in which to work and with reasonably safe appliances with which to work, and to exercise ordinary care to keep the same safe; that on the 4th day of November, 1914, while in the service of said defendant, while passing the aforesaid gut reel, his foot slipped upon said floor, so dangerously and negligently maintained as aforesaid, and he fell, and in falling his right hand was caught in said gut reel; that his hand became entangled in the spokes of the gut reel, so that his right arm was severed from his body at a point about three inches above the wrist; that after he became entangled in said gut reel and before his arm was so severed from his body, he attempted to slide or shift said lever and thereby stop the machine and thus prevent his arm from being severed; that, owing to the defective condition of said lever, it failed and refused to work and perform its function of throwing out said clutch and thus stopping the said gut reel. Plaintiff asked for judgment against the defendant in the sum of $34,560.

Defendant's answer consisted of a general denial and an allegation that said accident was caused by the contributory negligence of the plaintiff, in that he attempted to remove a portion of the hog intestines from the reel, referred to and described in said petition, without stopping same, and a further allegation that plaintiff was entirely familiar with the character and condition of said reel, its attachments and mode of operation at the time and for a considerable period prior to said accident and injury; consequently by remaining in the employ of the defendant, he assumed all the risks incident to said employment.

Plaintiff replied, denying any negligence upon his part, and denying that he was fa-

miliar with the defective condition of said reel.

Trial was begun on April 28, 1915, and the testimony on behalf of the plaintiff, as to the manner in which the injury occurred, was substantially as follows:

Daniel W. Strickland testified that he was working for Sulzberger & Sons Company at Oklahoma City on November 14, 1914, on what is known as the beef-casing machine, or the beef department; that it was his work to run one of the machines that they call "No. 1 Casing Machine"; that the purpose of said machine was to take the fat off the beef casings; that he had been engaged in running said machine something like five or six weeks prior to the injury; that said machine stands about 2½ feet off the floor on legs, and is possibly 3 feet wide and 3 or 4 feet long; that it is run by a leather belt, and partly by a chain belt, what is called a "ratchet chain"; that the reel was run by a sprocket chain; that the casing or guts are run through two rollers and brushes that take the fat off of same, and, after being run through said rollers and brushes, are attached to the reel and are wound up on said reel; that on the evening he was hurt, about 6 o'clock, he had gotten through running the guts that he had in the tub and went over to get a drink of water, across on the other side of the room; that after he got the drink he came back, and when he got to the corner of the machine he stepped, or must have stepped, on a piece of gut or something, and slipped and fell, and as he fell his right hand got between the frame of the machine and the reel; that there is a lever that throws the clutch out that comes out from the framework; that when he fell he threw himself back against this lever, and could not throw it out and stop the machine; that he had never tried to use this lever before he got his hand caught; that there was a lever overhead, but that he would have to stand and reach it, but that he could not reach it; that it was about 6 feet from the floor, and an ordinary man has to reach up to reach it; that you have to pull it out in order to stop the machine; that he dropped down on his knees in order to keep the machine from pulling him into it; that he was taken to St. Anthony's Hospital, and his hand and a portion of his arm were amputated; that he was caught down near the hub of the reel, and that the spokes on the reel were about 1½ inches apart at the place he was caught; that the reel in operation made about 3 or 4 revolutions per minute; that he was about 39 years of age at the time of his injury.

In cross-examination he testified that he had been working in the packing business about 4 years; that he was working at machinery more or less of the time, and was pretty well acquainted with machinery; that he had worked at similar machinery while employed by Morris & Co.; that he started in running the machine in question about the 17th or 18th day of September, and was running it up to the time of the accident; that the floor was slick and wet around there, and you could not prevent it. On rebuttal he testified, over the objection of the defendant, that the back end of the reel could be guarded by getting a guard and putting it on the edge of the frame of the machine extending up to the rim of the reel. At page 53 of the record he testified that a piece of sheet iron could be put between the spokes of said reel. On re-cross-examination he testified that in operating the machine he would be on the south side of same practically all the time; that in the operation of the machine nothing would require him to get towards the middle or north end of the reel; that he left the machine running when he went to get the drink of water. On being recalled, the witness testified that he slipped and fell on the south side of the machine near the east end; that he was going west, and in falling and in trying to save himself his left arm struck the rim of the reel and came in contact with the spokes near the hub of the reel; that his hand was caught on the north end of the reel; that he was in the habit of taking the guts off the reel without stopping the machine.

Mr. Higginbottom testified that he had run the machine on which the plaintiff received his injury prior to the time Strickland began to work the same; that during the time he run said machine the clutch did not work properly.

T. E. Robertson testified as to expectancy of plaintiff as shown by the American Table of Mortality.

At the conclusion of the plaintiff's testimony, the defendant demurred to the evidence, which demurrer was by the court overruled. Thereupon the defendant produced substantially the following testimony:

George W. Flabell testified that he was the assistant pork superintendent for Sulzberger & Sons Company; that he was in the fire hall at the plant shortly after the accident while Mr. Strickland was there; that he asked Strickland how the accident occurred, and he told him that some of the casing had slipped off the reel, that he put his hand through, as had been the custom

to put the casing back if he could without stopping the reel, and that when he did that he got his fingers caught; and that he tried to pull his hand out and could not and that he could not pull it out at all.

G. E. Long testified that he was fire marshal for Sulzberger & Sons Company, and that he was in the fire hall at the company's plant shortly after the accident when Strickland was there; that he heard Flabell ask him how he got his hand hurt, and that he said some of the casings had fallen off the reel; and that he reached after them and caught his hand.

L. C. Vincent testified that he had charge of the machine and engine department of the defendant company. He identified the picture shown at record page 80 as being approximately a correct likeness of the machine; that he had worked around machinery for 10 or 12 years, and that he was familiar with the operation of this particular kind of machine; that the purpose of the clutch on the machine is to stop the reel to put or take things off of it without stopping the whole machine; that it was his custom to inspect these particular machines once a week; that he examined this particular machine the next morning after the accident and found the clutch blocked; that it was blocked by having a wedge driven in, a block of wood up against this lever, and it was driven in between the end of the frame and the clutch that releases the reel and stops it.

John Shanahan testified that he was assistant foreman in the casing department in which this plaintiff worked; that three or four days prior to the accident he had been working on the machine and fixed it up; that the plaintiff told him that he could not keep the clutch in on his reel, and he told him to go ahead; that plaintiff said it kept slipping out all the time and he put a block in the machine and the witness pulled it out; that he saw plaintiff put the block in the clutch, and that he had taken it out; that he told him not to put the block in there; that he was 30 years old, and had been working around casing machines since he was 13 years old, and had worked in about eight different plants and for about six or seven different companies; and that it was not the custom of any of the companies for which he had worked to put guards in between the spokes on the side of the reel next to the frame.

James A. McNeese testified as to the wages received by plaintiff.

Dr. T. L. Lauderdale testified that he was called to attend the plaintiff on November 4, 1914, and that he found that there were three distinct mashes across the fingers and scratches up and down the arm for about three inches; that he was taken to the hospital; that on the way to the hospital the plaintiff made a statement with reference to how the accident occurred, in which he said, in reaching over the reel, he got his fingers caught, and could not get them out, and that he dropped down in order to keep the machine from pulling him into it; that the gut machine had become bound up in some way, and he was reaching over to disentangle a portion of the gut.

Daniel Strickland testified in rebuttal that he had not made the statements as testified to by Flabell, Long, Shanahan and Lauderdale.

A verdict was returned in favor of plaintiff for $5,500; motion for new trial filed, overruled, and excepted to, and time extended for preparation and service of case-made, and the cause properly brought here for review.

The first assignment of error argued by the defendant in its brief is that the trial court erred in forcing defendant to trial within ten days from the time the issues in the case were made up. Plaintiff's petition contained the following allegations:

"Plaintiff says, that on the 4th day of November, 1914, while engaged in the service of the defendant as aforesaid in its said packing plant in Oklahoma City, Okla., in the exercise of due care and caution for his own safety, without fault or negligence upon his part. * * * "

On the day of the trial the court, over the objection and exception of the defendant, permitted the plaintiff to file a reply to the answer of defendant, denying contributory negligence on the part of the plaintiff; and denying that the accident and injury were proximately caused by the negligence of the plaintiff, which directly contributed thereto; and denying that he was cognizant of the defective condition of said reel, as alleged in his petition; and denying each and every material allegation contained in defendant's answer; and denying that at the time of such injury he attempted to remove a portion of hog intestines from the reel referred to and described in his petition; and denying that by remaining in the employ of the defendant he assumed all risks incident to his said employment; and reaffirming the allegations set up and contained in his petition, and reiterating his prayer for relief. In the light of section 6005, Rev. Laws Okla. 1910, this action complained of by the defendant on the part of the trial court did

not constitute any substantial violation of any statutory right of the defendant. This section was in full force at the time the trial court permitted plaintiff to file his reply and make the amendment complained of. Frisco Lumber Co. v. Ethridge, 45 Okla. 566, 146 Pac. 441.

In the case of Title Guaranty & Trust Co. v. Turnbull, 40 Okla. 294, 137 Pac. 1178, it is said:

"Section 4791, Rev. Laws 1910, was in force when City of Ardmore v. Orr, supra, 35 Okla. 305, 129 Pac. 867, and Conwill v. Eldridge, supra, 35 Okla. 537, 130 Pac. 912, were decided. Said section was taken from the Code of Civil Procedure of Kansas, and in force there when the Supreme Court of Kansas held that it was error to compel the trial of a case on objection within ten days after the issues were made up. Section 6005, Rev. Laws 1910, does not apply to this case, as said section was first incorporated in Rev. Laws 1910, and under the act adopting the Code said section 6005 does not apply to pending causes."

The defendant next complains that the trial court erred in overruling the demurrer of defendant to the evidence of the plaintiff.

The plaintiff in his petition in this case alleged three grounds of negligence: First, that the floor around the machine, and on which plaintiff had to stand, was slippery; second, that a certain lever would not work and perform the function of throwing out the clutch and stopping the reel; third, that the reel was not properly guarded. As to the first ground of negligence, the plaintiff introduced the following testimony: Plaintiff testified as follows:

"When I got to the corner of the machines, my machine there, I stepped, I must have stepped on a piece of gut or something, and I slipped and fell."

Plaintiff again testified with reference to the slippery condition of the floor as follows:

"Q. What did you say that you slipped on? A. I could not say. Q. Well, the floor along there was always wet, was it not? A. No; I would not say that. Q. Don't you know that it was? A. Well, I could not say that; no, sir. Q. Well, what was on the floor, a sort of drip from the guts? A. Well, it was a slime. Q. And that slime was always there while they were running? A. Not necessarily. Q. Was not that slime there all of the time that you were operating there? A. Not necessarily, but of course when you were working there with the casings of course it would create a little slime, more or less, of course. Q. Was there not a drain there to carry this away? A. Yes, but it did not always hold all of it. Q. There was a drain or something there to carry this slime to keep

this away from the machines? A. Yes, sir. Q. Was there ever any lot of stuff there where they washed these casings, and did it not make a lot of this stuff or slime, and was that not carried down the floors there in this runway to the sewer, and was not the majority of it carried away in the sewer? A. Well, it was intended to carry away this slime, but it did not do it, that is, all of it, and the floors would be slick and wet around there, and you could not prevent it. Q. Then you think that what there was there on the floor was just what could not be prevented? A. I think—yes, I think that it could not be prevented."

That is to say, that the drain or receptacle, or something provided by the defendant to carry away the slime and refuse from these casings, was not of sufficient size or capacity to always carry it all off, and the floor would be slick and wet around the casing machine, and you could not prevent this condition because of the insufficiency of this drain or receptacle or something provided by the defendant to at all times carry away from the vicinity of the casing machine, where plaintiff worked, all of the slime and refuse and waste matter from said casings while in process of being run through said machine. This was properly a question of fact for the jury.

"Plaintiff was employed as head sewer, and it was his duty to stand at one end of the compress and sew together the bagging around the bales as same was compressed, and in order to do this it was necessary for him to stand on the floor or platform at the end of the compress. He was also required to straighten any of the bales that might not be in the proper position on the press, and to do this it was necessary for him to step down on the platen or a portion of the compress itself, which was beneath the level of the floor, and which moved up and down as the compress was operated, and quickly straighten the bale, and step back. For several days before the date of the accident the weather had been extremely cold, and the compress had not been in operation. The compress itself was inclosed by a structure covered over with sheet iron and with openings in the sides. A pipe came down from the top platen of the press and went into the floor near where plaintiff was required to work, the purpose of which was to carry water from the roll or top of the platen. It appears that this pipe had frozen, and that water therefrom leaked upon the floor at the place where plaintiff was required to work. On the day in question they were compressing about 120 bales per hour, and the cotton was brought in from the platform, and as it was compressed, the ice and snow therefrom accumulated on the floor where plaintiff was required to stand, and in connection with the water leaking from the pipe

froze and became slick, and when plaintiff had straightened a bale that was not in proper position in the compress and stepped back, he slipped upon the ice so accumulated and fell, and his right hand was caught in the compress and injured.

"The defendant urges that there was no evidence of negligence upon its part in the first instance, and that plaintiff's own negligence was the proximate cause of his injury. To constitute actionable negligence upon the part of defendant, where the wrong is not willful and intentional, three essential elements are necessary: (1) There must be some duty owing by it to the plaintiff; and (2) a failure upon its part to perform that duty; and (3) injury proximately resulting to the plaintiff from such failure upon its part. C., R. I. & P. v. Duran, 38 Okla. 719, 134 Pac. 876.

"The master is bound to exercise reasonable care and diligence to provide a reasonably safe place in which the employe or servant is to work, and also reasonably safe machinery, tools, and appliances with which to work, and to supply the servant with reasonably safe materials upon which to perform the work required of him. Chickasaw Comp. Co. v. Bow, 47 Okla. 576, 149 Pac. 1166; Midland Valley R. Co. v. Williams, 42 Okla. 444, 141 Pac. 1103; C., R. I. & P. R. Co. v. Brazzell, 40 Okla. 460, 138 Pac. 794; Great Western Coal & Coke Co. v. Malone, 39 Okla. 693, 136 Pac. 403; C., R. I. & P. R. Co. v. Wright, 39 Okla. 84, 134 Pac. 427; C., R. I. & P. R. Co. v. Duran, 38 Okla. 719, 134 Pac. 876.

"The allegations of negligence are that plaintiff was required to assist in compressing cotton covered with snow and ice, and in permitting the pipe mentioned to become frozen and water to leak upon the place where plaintiff was required to stand. Whether this constituted ordinary care upon the part of the defendant was a question of fact for the jury.

"In Dewey Portland Cement Co. v. Blunt, 38 Okla. 182, 132 Pac. 659, it was said: 'Where the question whether or not the master has been negligent depends upon the nice distinction between that which is reasonably safe and that which is not so, it is a question entirely of degree, and one exclusively for the decision of a jury; and, where a jury, with all the evidence before them, have found a verdict, this court on review will not interfere to disturb their finding by setting aside the verdict on the ground that there was no evidence of neglect.'

"In M., K. & T. R. Co. v. Shepherd, 20 Okla. 626, 95 Pac. 243, this court quoted with approval from the case of Gulf, C. & S. F. R. Co. v. Ellis, 54 Fed. 481, 4 C. C. A. 454, this language: 'In cases like the one at bar, which turn on the question whether the party exercised ordinary care or was guilty of negligence, after the usual and ap-propriate definitions of those [particular] terms by the court, it is the province of the jury to say from a consideration of the evidence whether in the particular case ordinary care was exercised, or whether there was negligence. In other words, what is ordinary care, or what is negligence, in the particular case is a question of fact for the jury, and not of law for the court.'

"In Grand Trunk R. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 489, the Supreme Court of the United States said: 'There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms, 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot arbitrarily be defined. What may be termed 'ordinary care' in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs.'

"What is and what is not negligence is generally a question for the jury, and not for the court. Where the standard of duty is not fixed, but variable, and shifts with the circumstances of the case, it is incapable of being determined as a matter of law, and, where there is sufficient evidence, must be submitted to the jury to determine what it is and whether it has been complied with. On the other hand, when the standard is fixed and when the measure of duty is defined by law, and is the same under all circumstances, its omission is negligence, and may be so declared by the court. It is only in cases where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence becomes one of law for the court, and then only when no recovery can be had upon any view which can properly be taken of the facts the evidence tends to establish. Littlejohn v. Midland Valley R. Co., 47 Okla. 204, 148 Pac. 120. On the contrary, if the evidence is such that reasonable men may draw different conclusions respecting the question of negligence, then such question is one of fact, and should be submitted to the jury. Littlejohn v. Midland Valley R. Co., supra, and authorities cited; Sans Bois Coal Co. v. Janeway, 22 Okla. 425, 90 Pac. 153; St. L. & S. F. R. Co. v. Copeland, 23 Okla. 837, 102 Pac. 104.

" 'All the authorities agree that this duty is a continuing one on the part of the master, who is required to see to it from time to

time as the work progresses, and not permit the servant to work himself into a dangerous place, owing to limited space or accumulated entanglement on the floor, calculated to trip him and cause him to fall when heavily burdened.' C., R. I. & P. R. Co. v. Townes, 43 Okla. 568, 143 Pac. 680.

"The business in which the defendant was engaged and about which plaintiff was employed was the compressing of cotton bales, which under ordinary circumstances is more or less hazardous, and it certainly would not be denied that it was more so when the cotton to be compressed was frozen and covered with snow and ice, and, to say the least of it, this was not the usual and ordinary conditons under which such work was carried on. To say whether or not the master would be guilty of negligence and want of ordinary care in requiring the cotton to be compressed under the circumstances disclosed, or was in the exercise of ordinary caution upon its part, taking into consideration the fact that the plaintiff had had no experience with or knowledge of the dangers of compressing cotton under like conditions, can hardly be said to be a question of law for the court. In addition to requiring the work to be done under the circumstances with only such arrangements upon the ,part of the defendant as had been made for the prosecution of such work under ordinary conditions, the pipe running down into the floor at the place where plaintiff was required to stand had become frozen and clogged, and water permitted to leak upon the floor and freeze during the progress of the work, and it cannot be said that the leakage of the pipe was an incident necessary to carrying on of the business. The weather had been extremely cold for four or five days, and defendant's superintendent was in and about the building and around the compress during the progress of the work, and the jury were justified in finding that defendant had knowledge of these conditions. Under all the circumstances disclosed by the evidence, the court was right in submitting this issue to the jury.

"A large part of defendant's brief is devoted to argument upon the proposition that plaintiff knew of the conditions, and with full knowledge thereof continued in the discharge of his duties. This argument goes to the question of assumption of risk or contributory negligence, and these questions, under the Constitution, are exclusively for the determination of the jury. C., R. I. & P. R. Co. v. Duran, 38 Okla. 719, 134 Pac. 876; St. L. & S. F. R. Co. v. Long, 41 Okla. 177, 137 Pac. 1156. Ann. Cas. 1915C, 432."

(From Interstate Compress Co. v. Arthur opinion by Mr. Justice Hardy, 53 Okla. 212, 155 Pac. 861.)

In the instant case the allegations of negligence in this connection are that the defendant—

"at said time and place, negligently failed to provide necessary and proper receptacles and vessels for the handling of hog intestines about and near the said machine, as a result of which said negligence of defendant, the slime and mucous from off the said intestines was on the floor of the room in which said machine was located, rendering the floor very slick and difficult and dangerous for this plaintiff to walk upon in the course of his duties as an employe of the defendant."

Whether this constituted ordinary care upon the part of the defendant was a question of fact for the jury under proper instructions from the court. The jury by their verdict in this case have found that the defendant was negligent in this regard, and that this negligence contributed to the plaintiff's injury. If the plaintiff had not slipped and fallen and thrown out his right hand and arm to save himself, would the accident have occurred as he has alleged it? Most certainly not. That which caused plaintiff to slip and fall was the cause of the fall, and, the cause of his fall being the negligence of the defendant in failing to perform the duty it owed him of furnishing him with a reasonably safe place in which to work, had the plaintiff injured his spine or head by simply coming in contact with the floor, then and in that case his slipping and falling would be the proximate cause of his injury; but, on the other hand, the defendant being negligent in maintaining the floor about the casing machine in question in a dangerous and unsafe condition, the plaintiff thereby slipping and falling contributed to his injury and started him on his way to the proximate cause thereof, to wit, the negligence on the part of the defendant in failing to properly guard the casing machine as compelled to do under the mandatory law. Bales v. McConnell, 27 Okla. 407, 112 Pac. 978, 40 L. R. A. (N. S.) 940.

To sustain the second ground of negligence, to wit, that the lever would not work and perform the function of throwing out the clutch and stopping the machine, the plaintiff introduced the following testimony:

"I slipped and fell, and I caught, of course, just like any man would do to keep from falling, and as I fell my right hand got between the frame of this machine and this reel, just like that, and before I could get back up and out and get a hold of myself my fingers were broken right here. And there is a lever there that throws that clutch out that comes out this way, from this framework, and when I fell I threw myself back against this lever, and I could not throw it out and stop the machine. There is a lever overhead, but you have to stand

like that to reach it, and I could not reach it; it is about 6 feet from the floor, and an ordinary man has to reach up to reach it. And you have to pull it out in order to stop the machine. But when this lever down here on the frame is in working order, you can pull it out and stop the machine, but that lever there would not work and would not pull the clutch out, and I could not reach the other lever and could not throw the machine out of gear."

Had this lever performed its function when the plaintiff threw his body against it after his hand was caught in the spokes of the reel on this casing machine, this injury could not have been as severe as it was. This negligent condition of this lever then contributed to augment or increase the extent of the injury, but was not the direct or proximate cause of the same, and was properly a question for the jury to consider in determining how and to what extent the plaintiff was so injured and in arriving at the amount of damages he should receive to compensate him therefor.

Plaintiff testified as to the manner in which said gut reel could be guarded as follows:

"Q. I will ask you whether or not if you know if there is a way by which these spaces in between these spokes on this reel could be filled in or closed up or protected so as to protect and keep the human hands out of them, so that a person would not become injured. A. Why, yes. Q. Well, will you state to the jury how it could be done? A. You could get a guard and put on the edge of the rim of the machine and let it extend up against the rim of the reel, I mean put it from the edge of the frame of the machine to the rim of the wheel, and it would take the whole period of five minutes' time —well if I had two hands I would or could have fixed it in an hour so any man absolutely could not put his hands into it; it could be fixed in an hour's time by a man with two hands easy. Q. If the guards that you have spoken of and just described were placed on that machine, would the machine still have answered and served the same purpose that it was at the time that you was injured? A. I understand that it would have no effect on the machine whatever. Q. Now explain to the jury as nearly as you can where you mean that there should be guards placed, to protect the human life and arms. A. Well, in here, in between these spokes. Q. Well, just explain to the jury where you would place them and how you would place them. A. Well, simply put a piece of sheet iron, or—. Q. Just explain to the jury where you would place that, where it should be placed to protect such accidents. Where should this guard be placed on this frame, this gut reel to prevent such accidents that

occurred to you? A. The guards should be placed on the frame of the machine, just take a piece of casting or sheet iron, or piece of sheet steel and put in there from the frame of the machine there between the spokes from the frame of the machine down to the axle, and that would be cut in kind of an oval shape, and that would close up that opening so that it would be impossible for you to get your hand or fingers caught in it the way that I got my hand caught. Q. Is there any other way that this reel, this gut reel, could have been readily fixed so that such accidents would not occur? A. Well, there would be one safe way to fix it; that would have been a safe way to fix it so that this accident would not have occurred."

And the testimony in this case is undisputed that this part or portion of this machine could have been guarded by the expenditure of but little time and money without affecting the efficiency of its operation, and without rendering it useless for the purposes for which it was intended. Section 3746, Rev. Laws 1910, art. 4, a part of our Factory Act, reads in part as follows:

"3746. Machinery to Have Safety Devices. The owner or person in charge of a factory or any institution where machinery is used shall provide belt shifters or other mechanical contrivances for the purpose of throwing belts on or off pulleys, whenever practicable. All machines shall be provided with loose pulleys and all vats, pans, planers, cogs, gearing, belting, shafting, setscrews and machinery of every description shall be properly guarded. * * * "

Section 3756, Rev. Laws 1910, and a part of article 4, supra, reads as follows:

"3756. Penalty for Violating This Article. Any person who fails to comply with any of the provisions of this article shall be deemed guilty of a misdemeanor, except as otherwise provided, and on conviction thereof shall be fined in a sum not less than ten dollars nor more than one hundred dollars for each offense."

Section 8029 (7087i) vol. 3, Burns' Ann. Ind. Stat., Revision 1908, reads in part as follows:

"It shall be the duty of the owner of any aforesaid establishment, or his agent, superintendent or other person in charge of the same, to furnish and supply, or cause to be furnished and supplied therein, in the discretion of the chief inspector, where machinery is used, belt shifters or other safe mechanical contrivances for the purpose of throwing on or off belts or pulleys; and wherever possible, machinery therein shall be provided with loose pulleys; all vats, pans, saws, planers, cogs, gearing, belting, shafting, setscrews and machinery of every description therein shall be properly guarded. * * * "

And section 8045 (7087y), of the same statutes of Indiana, supra, reads as follows:

"Any person who violates or omits to comply with any of the provisions of this act or who refuses to comply with the orders of the chief inspector, properly made under the provisions of this act, who suffers or permits any young person or child to be employed in violation of its provisions, shall be deemed guilty of a misdemeanor, and on conviction shall be fined not more than fifty dollars for the first offense, and not more than one hundred dollars for the second offense, to which may be added imprisonment for not more than ten days, and for the third offense a fine of not less than two hundred and fifty dollars and not more than thirty days' imprisonment in the county jail."

New York and the state of Washington also have statutes very similar to those of our state and the state of Indiana, set forth, hereinabove.

Counsel for defendant make the following argument and citation of authority in their brief, after quoting section 3746, supra:

"It is our contention that the term 'machinery of every description' in the above section of the statute does not mean that it is the absolute duty of every owner of a factory to guard every piece of machinery used in running his factory, without regard to the question of whether or not the machine was inherently dangerous to those employes using or working around same, or whether same was of such simple construction and design that a reasonably prudent person could not anticipate any danger from the use of same. This would be impracticable, and would make the owner an absolute insurer of the safety of his employes. The more reasonable and, we submit, the proper construction of the term 'machinery of every description,' as used in the section of the statute above referred to, is that same does not include any and all machinery, but is a mere general term, following words of specific description, and covers only machinery of like character to those designated by the specific words, and that said section only requires the guarding of such machinery as is inherently dangerous to employes whose duty requires them to work in the immediate vicinity thereof. The courts of Indiana and New York have given the term 'machinery of every description,' as used in the factory acts of those states, the construction for which we contend. The factory acts of those states are practically the same as section 3746, Rev. Laws 1910, as above set out.

"In the case of Laporte Carriage Co. v. Sullender, 165 Ind. 290, 75 N. E. 277, paragraphs 2 and 3 of the syllabus are thus stated:

"'Factory Act, sec. 9 (Burns' Ann. St.

1901, sec. 7087i), provides that all vats, pans, saws, planers, cogs, gearing, belting, shafting and setscrews, and "machinery of every description" shall be properly guarded. Held that the term "machinery of every description" did not include all machinery, but was a mere general term, following words of specific description, and therefore included only things or cases of a like character to those designated by the specific words.

"'Factory Act, § 9 (Burns' Ann. St. 1901, § 7087i), requiring that all vats, pans, saws, planers, etc., and "machinery of every description" shall be properly guarded, only requires the guarding of such parts of machinery in a factory within the statute as are dangerous to employes whose duty requires them to work in the immediate vicinity thereof, and which may be properly guarded without rendering it useless for the purposes for which it was intended.'"

They follow this with a lengthy quotation from the body of the opinion of the Sullender case. They then cite and quote from the case of Glens Falls Portland Cement Co. v. Travelers' Insurance Co., 162 N. Y. 399, 56 N. E. 897; Bemis Indianapolis Bag Co. v. Krentler, 167 Ind. 653, 79 N. E. 974; Powalske v. Cream City Brick Co., 110 Wis. 461, 86 N. W. 153; Schoultz v. Eckardt Mfg. Co., 112 La. 568, 36 South. 593, 104 Am. St. Rep. 452; National Fire Proofing Co. v. Roper, 38 Ind. App. 600, 77 N. E. 370; Jenkins v. Lafayette Box Board & Paper Co., 43 Ind. App. 463, 87 N. E. 992; National Drill Co. v. Myers, 40 Ind. App. 322, 81 N. E. 1103; Byrne v. Nye & Wait Carpet Co., 46 App. Div. 479, 61 N. Y. Supp. 741; Dillon v. National Coal Tar Co., 181 N. Y. 186, 73 N. E. 978; King v. Reid, 124 App. Div. 121, 108 N. Y. Supp. 615. With this proposition propounded and argued by counsel for defendant, and with these authorities cited and quoted in support thereof, we cannot agree. The Indiana decisions are largely relied upon by counsel for defendant to support this point. Let us see the true condition of said decisions in that state as they now stand on this question. Mr. Labatt, in his work on Master & Servant (2d Ed.) vol. 5, at pages 5684-5686, in the body of the text says:

"The doctrine of ejusdem generis was applied in an Ontario case so as to limit materially the effect of the earlier statute. In Indiana the Supreme Court has been inconsistent in its construction of the statute providing: 'All vats, pans, saws, planers, cogs, gearing, belting, shafting, setscrews, and machinery of every description.' The rule finally adopted is that the phrase 'machinery of every description' does not modify in any way the specific appliances mentioned, but embraces all other kinds of machinery,

which would be too numerous for the Legislature to mention, although an earlier decision of the Supreme Court to the effect that the general terms simply referred to other appliances of the same general description as those indicated by the specific terms, under the doctrine of ejusdem generis, was not in terms overruled. The doctrine of the Washington court is the same as that which appears to prevail in Indiana. And a somewhat similar view is taken of the statute in New South Wales."

In his notes to this portion of his text he says:

"In Laporte Carriage Co. v. Sullender (1905) 165 Ind. 290, 75 N. E. 277, the court held that an emery wheel was not embraced within the statute, since that form of machinery was not specifically mentioned. The court said: 'The rule generally affirmed by our decisions, and also by other authorities, is that where words of a particular or specific. description in a statute are followed by general words which are not so specific and limited, the latter are to be construed as applicable to persons, things, or cases of like character to those designated by the preceding particular or specific words, unless there is a clear manifestation on the part of the Legislature of a contrary purpose. * * * The rule in question is commonly denominated by the authorities "ejusdem generis," because it usually restricts expressions in a statute, such as "all others" or "any others," to persons and things of the same kind or class of those specifically designated by the preceding words. There being nothing in the statute in question to indicate to the contrary, the general phrase, namely, "and machinery of every description therein," must under the rule stated, be construed as meaning and including machinery or appliances belonging to or of the class or character designated as "vats, pans, saws," etc. The paragraph in question, however, utterly fails to aver facts to show that the emery belt mentioned therein is of the kind or character of the class of machinery specifically designated by the statute to be guarded. Aside from the fact that it throws off particles of emery as alleged, there is nothing to show a necessity for guarding it, for the reason that its operation or use is attended with danger to the employes of appellant who work in the vicinity thereof.'

"In National Fire Proofing Co. v. Roper (1906) 38 Ind. App. 600, 77 N. E. 370, the court, after citing the Sullender case, said: 'The fact that a particular appliance, machine, or part of a machine, is dangerous to those using it, or passing near it in the line of duty as employes, would not be sufficient to bring the injury caused by its being unguarded within the statute; for manifestly there are many kinds of appliances and machines and parts of machines, wholly different from those particularly mentioned in the statute, which may be thus dangerous.'

"But in United States Cement Co. v. Cooper (1909) 172 Ind. 599, 88 N. E. 69, the same court, in holding that a screw conveyor was within the statute, said that the word 'all' qualifies each class or genus of things specified, and leaves nothing of any class mentioned for the general words 'and machinery of every description' therein to embrace under the rule of ejusdem generis, so that these words must be held to embrace all the great body or mass of machinery not expressly mentioned in the statute. Unfortunately the Cooper case makes no mention of the Sullender case upon this point, although it is apparently impossible for the two cases to stand together.

"In Inland Steel Co. v. Kachwinski (1907) 151 Fed. 219, 80 C. C. A. 571, it was said that the Sullender case was decided merely upon questions of pleading, and that the emery belt in question might have been brought within the statute by averring and proving that it was of the same kind as an unguarded vat, pan, saw, etc., with respect to danger of operating and practicability of erecting guards. The language used in the Sullender case does not tend to support this view, but it is supported by the fact that the plaintiff was given leave, upon request, to file an amended complaint.

"In Pein v. Miznerr (1908) 41 Ind. App. 255, 83 N. E. 784, the Appellate Court was of the opinion that a mangle in a laundry was within the terms of the statute, but they were confronted with the Sullender case, and consequently transferred the case to the Supreme Court, with the recommendation that the Sullender case be overruled or modified so that it would accord with the expressed legislative intent and the current of the decisions in that state; but when the case came before the Supreme Court in Pein v. Miznerr (1908) 170 Ind. 659, 84 N. E. 981, the question was not discussed at all, the lower court being directed to sustain a demurrer to the complaint upon the ground that it disclosed contributory negligence upon the part of the plaintiff.

"The argument of the Appellate Court in the Pein case appears very clear and conclusive: 'The doctrine of ejusdem generis is that where a general word follows particular and specific words of the same nature as itself, it takes its meaning from them, and is presumed to be restricted to the same genus as those words. * * * The language here does not admit of the application of the ejusdem generis doctrine. The phrase "and machinery of every description" cannot be limited by the prior enumeration, for the reason that such enumeration is not an enumeration of machines at all—the genus of those words is not of the same nature as of "machinery of every description." A vat is not a machine; neither is

a pan, nor a saw. Cogs, gearing, belting, shafting, and setscrews are not machines, but may each or all enter into and be a part of various machines. Since no enumeration of machinery precedes the general terms, there is nothing to limit those terms, and they are broad enough to cover any machine that is dangerous to life or limb, and which, without impairing its utility, can be guarded. * * * In the * * * (Sullender case) an emery belt was held not to "come within the term or word 'belting,' as employed in the statute." But if an emery belt is a "machine," it is the same kind of a machine as "belting";' if it is a "thing," it is of like character to "belting." Whether it is a "machine" or a "thing," it should have been held to be within the statute. If an emery belt does not come within the general words, it is difficult to conceive of any machine or thing which could possibly do so. It is the dangerous quality of machinery which the statute seeks to guard against, and it is because of that danger that "all other machinery" is brought within the scope of the statute. Whether the danger lies in a wheel drop of a foundry (Green v. Amercan Car & Foundry Co. [1904] 163 Ind. 135, 71 N. E. 268); in a dovetailing machine (N. D. Huey Co. v. Johnston [1905] 164 Ind. 489, 73 N. E. 996); in the bits of a shaper (United States Furniture Co. v. Taschner [1907] 40 Ind. App. 672. 81 N. E. 736); in the bits of a boring machine (Buehner Chair Co. v. Feulner [1905] 164 Ind. 368, 73 N. E. 816); in a screw conveyor (United States Cement Co. v. Cooper [1907, Ind. App.] 82 N. E. 981): or in an emery belt used to polish metal parts of vehicles; or in the mangle of a laundry—should make no difference. They are all dangerous machines, and should be guarded, provided, of course, the same can be done without impairing their utility.' "

"In Ward v. National Lumber & Box Co. (1909) 54 Wash. 304, 103 Pac. 1, the court said: 'The appellant invokes the rule of ejusdem generis, and insists that the friction wheel, not being specified in the Factory Act and not being of the same kind or genus as any of the machinery specially mentioned, does not fall under the head of machinery of other or similar description, and that therefore the assumption of risk attaches in this kind of a case. Considering the whole scope of the Factory Act and the evident intention of the Legislature we are unable to reach the conclusion contended for by the appellant. There is no doubt that the general rule is that the general word must take its meaning and be presumed to embrace only things or persons of the kind designated in the specific words; but * * * the maxim has no application where there is no room for construction, but only when the meaning is not apparent from the language itself; and it is also said: "Nor does the rule obtain where the specific words signify subjects greatly different from one another,

for here the general expression might very consistently add one more variety. In such case, the general term must receive its natural and wide meaning." 26 Am. & Eng. Enc. Law, 610. This is peculiarly the case under our statute, where the specific words signify subjects greatly different from one another, vats, pans, trimmers, cut-off gang edger, and other saws, planers, cogs, gearings, belting, shafting, coupling, setscrews, live rollers, conveyors, mangles in laundries, etc., all or nearly all, being machinery, or parts of machinery, of different character. We think, in the face of the statute, it would be doing violence to the evident intention of the Legislature to hold that the duty to guard the machinery in question was not imposed upon the mill owner; and the testimony is undisputed that this machine could have been guarded without affecting the efficiency of its operation.' "

"In Davis v. Langdon (1911) 11 New So. Wales St. Rep. 149, it was held that section 28 of the New South Wales Factories and Shops Act 1896 imposes an absolute obligation on the occupier of a factory to fence all dangerous parts of machinery therein, whether they are the particular parts specified in subsections (1), (2), and (3), or not."

This construction of the phrase "and machinery of every description," is, in our opinion, the correct one, and in accord with the construction placed thereon by the Supreme Court of this state.

In the case of Frisco Lumber Co. v. Ethridge, 45 Okla. 566, 146 Pac. 441, the deceased, W. P. Ethridge, while assisting in the operation of a lath machine, which was located in the sawmill building of the plaintiff in error, and while his back was turned to a trimmer machine located in said building on the same floor about 30 feet from the lath machine, and while he was in the exercise of care and caution on his part, was struck on the side of the head by a block of green pine timber, 2x4x5 inches, which was thrown from the said trimmer machine a distance of some 20 feet with great force and violence, and severely injured, dying from said injuries in about an hour thereafter. In an action for damages brought by his surviving widow against the company, the verdict and judgment of the trial court were upheld by this court, Chief Justice Kane. after quoting section 3746, supra, speaking for the court, making use of this language:

"The statute requires that 'machinery of every description shall be properly guarded.' Clearly the 'trimmer machine' must be held to be embraced within this phrase. Green v. American Car & Foundry Co., 163 Ind. 135, 71 N. E. 268; Inland Steel Co. v. Kachwinski, 151 Fed. 219, 80 C. C. A. 571; Jones

v. American Caramel Co., 225 Pa. 644, 74 Atl. 613; Goodwin v. Newcomb, 1 Ont. L. Rep. 525."

In the case of Jones v. Oklahoma Planing Mill & Mfg. Co., 47 Okla. 477, 147 Pac. 999. Mr. Justice Hardy, speaking for this court, said:

"The section of the statute upon which plaintiff relies is section 3746, Rev. Laws 1910, which in terms requires that machinery of every description shall be properly guarded, and, where this statute has been violated, and injury results to an employe as the direct and proximate result of the failure of the master to properly guard his machinery, it has already been established by previous decisions of this court that the employe does not assume the risks occasioned by failure of the master to perform this statutory duty. Sans Bois Coal Co. v. Janeway, 22 Okla. 425, 99 Pac. 153; Curtis & Gartside Co. v. Pribyl, 38 Okla. 511, 134 Pac. 71, 49 L. R. A. (N. S.) 471; Chicago, R. I. & P. R. Co. v. Duran, 38 Okla. 719, 134 Pac. 876; Great Western Coal & Coke Co. v. Coffman, 43 Okla. 404, 143 Pac. 30."

The trial judge in this case charged the jury under the Factory Act, and also went further and charged the jury as to the law touching the duty of the defendant to furnish the plaintiff with a reasonably safe place in which to work and reasonably safe machinery with which to work, and also charged the jury concerning the assumption of risk. Had the court simply charged the jury under the Factory Act, then it would not have been necessary to have charged them as to the common-law liability as to a reasonably safe place in which to work, and reasonably safe machinery with which to work and the defense thereto of assumption of risk. Jones v. Oklahoma Planing Mill & Mfg. Co., supra. But having done so by proper instructions, we see no reversible error therein. This Factory Act is a mandatory statute. The things expressly enumerated therein, together with machinery of every description, shall be properly guarded. This declares the fixed and settled public policy of the state touching these matters and things, and a violation of this act is made a crime and punishable as such. The sovereign, in order to afford greater and better protection to the lives and limbs of the subject who earns a livelihood by working with and around machinery, and in order to lessen the chances of accidents, has expressed her will in the solemn mandates of this mandatory and penal statute which must be obeyed, and a failure to obey it becomes and is negligence per se, and those who disobey it are not entitled to the defense of assumption of risk, but may inter-

pose the defense of contributory negligence. These matters were questions of fact for the jury. They were submitted to the jury. The jury by their verdict have found under the law and the evidence that the defendant was negligent as complained of. This court will not disturb their verdict. Curtis & Gartside Co. v. Pribyl, 38 Okla. 511, 134 Pac. 71, 49 L. R. A. (N. S.) 471; Frisco Lumber Co. v. Ethridge, supra; Jones v. Oklahoma Planing Mill & Mfg. Co., supra.

Counsel of record for the defendant complain of the giving of instruction No. 9, which reads as follows:

"If after a fair and impartial consideration of all of the testimony in this case and in compliance with the instructions herein given you, you believe that the plaintiff has established by a preponderance of the testimony that while in the employ of the defendant in and about the operation of the machine, known as the 'gut reel,' he was injured in the manner alleged in his petition, and that such injury was the direct or proximate result of the negligence of the defendant, as alleged in his petition, and on account of such injury so received he has suffered physical pain and mental anguish, and loss of time from his work, and that he will continue to suffer physical pain and mental anguish on account of said injury, as alleged in his petition, and that as a result of said injuries his earning capacity has been impaired, as alleged in his petition, it would be your duty to find for the plaintiff, and assess his recovery in damages in such sum as you find from the evidence will compensate him for the injury so sustained, not to exceed the sum of $34,560"

—and cite in support of their contentions, Oklahoma R. Co. v. Milam, 45 Okla. 742, 147 Pac. 314; C., R. I. & P. R. Co. v. Clark, 46 Okla. 382, 148 Pac. 998. But the record discloses in this case that the trial court followed instruction No. 9 with instruction No. 10, which reads as follows:

"But, upon the other hand, if after a fair and impartial consideration of all of the testimony in this case, and in compliance with the instructions herein given you, you find that the plaintiff has failed to establish the allegations of his petition by a preponderance of the testimony, it would be your duty to find for the defendant; or, if you find that the defendant has established by a preponderance of the testimony that the injuries sustained by the plaintiff was occasioned by the risks of his employment which he assumed, or was occasioned, and was the direct or proximate result of his own contributory negligence, it would be your duty to find for the defendant."

This, we think, was sufficient and was to the same purpose and effect as though it

was contained in one instruction, and sufficiently .answers the requirements of the cases cited by counsel for defendant and set out herein, supra.

As to the assignments of error touching, the giving and refusing to give instructions, we have carefully examined all of the instructions given and refused by the trial court, and are of the opinion that, as a whole, they are substantially correct, and that no reversible error can be predicated thereon. Upon the entire record, after a careful examination thereof, it does not appear that there was any misdirection of the jury, or improper admission or rejection of evidence, or error in any matter of pleading or procedure which probably resulted in a miscarriage of justice, or constitutes any substantial violation of a constitutional or statutory right of the defendant. That the verdict is excessive is not complained of. Under such circumstances, "No judgment shall be set aside or new trial granted by any appellate court of this state." Section 6005, Rev. Laws 1910.

The judgment of the court below is therefore affirmed.

By the court: It is so ordered.